No. 35,936

Mrs. KATHERINE McMILLAN, Widow and Guardian of the Estate of MAX LEE McMILLAN, DARRELL CLARE McMILLAN, EVELYN MAY McMILLAN and RUTH MARCILE McMILLAN, Minors, *Appellants*, v. THE KANSAS POWER AND LIGHT COMPANY, *Appellee.*

(139 P. 2d 854)

Opinion filed July 10, 1943.

*C. W. Slifer,* of St. John, argued the cause, and *Clarence V. Beck,* of Emporia, was on the briefs for the appellants.

*Robert E. Russell,* of Topeka, argued the cause, and *Clayton E. Kline, M. F. Cosgrove, Balfour S. Jeffrey* and *C. A. Magaw,* all of Topeka, were on the briefs for the appellee.

The opinion of the court was delivered by

SMITH, J.: This is a claim for workmen's compensation. The commissioner of workmen's compensation made an award denying compensation. On appeal this award was approved by the district court. The claimant has appealed.

There is not much dispute in the evidence. The only witnesses to testify were a fellow workman and three doctors. They all testified for the claimant. There is a dispute as to the conclusion to be drawn from the established facts, however. The issue at the hearing as it finally turned out was whether the deceased met his death as the result of an accident arising out of and in the course of his employment.

The deceased was a laborer employed by the respondent. On the evening of January 13, 1940, a service man for respondent called at the home of deceased in Macksville, Kan., and took him with him for the purpose of looking for some line trouble at Belpre, Kan. When McMillan came out of his house he was coughing and said that he had just emptied some ashes and probably inhaled some fumes which caused his coughing. Byrne told McMillan to load some wire which weighed about one hundred eight pounds. McMillan took the truck and came back with the wire loaded and the two then drove to Belpre. It was snowing at the time and was cold, and when they arrived at Belpre they rode around the line in the truck. McMillan got out of the truck and walked about one hundred fifty feet along part of the line. When he came back to the truck he was coughing. He mentioned that he had a pain in his chest and would get a drink of water to stop his coughing. They went to a café, where McMillan got a drink. They sat in the café a few minutes and then McMillan stated he was going to the toilet and said "I will be ready to go in a few minutes." After a few minutes there was a tapping at the window. Byrne went to the door and as he stepped outdoors McMillan mumbled something to him and grabbed hold of him and pulled them both into the snow. Byrne called the attendant and the two dragged McMillan into the restaurant and revived him. They took McMillan then to the doctor's office but before they left he had a bad spell of vomiting. Byrne left him at the doctor's office after he seemed to revive a little, and went back to the café. He had hardly entered the café when there was a phone call from the doctor's office and when he got back there McMillan was dead. Byrne testified that about forty-five minutes elapsed from the time when McMillan was taken to the doctor's office until he died and that to his knowledge McMillan had not worked on that day other than to take the ashes out.

One doctor testified that he was the physician engaged by the Power and Light Company to care for its employees and that the

day after his death he performed an autopsy on the body of Mc-Millan at the order of the county coroner. In answer to a question of what caused McMillan's death he testified—

"A. He had a right lobar pneumonia in the stage of red hepatization, a chronic endocarditis and he had a obliterating endarteritis of the right coronary artery with a recent thrombi completely blocking the right artery. Of course, the immediate cause of his death was an acute dilation of the heart and there was areas throughout his heart, as I remember, of myocardiac degeneration.

"A. He died of chronic thrombosis following this pneumonia. He had an acute pneumonia at the time he was out there working.

"A. The toxin of the pneumonia weakened his heart muscle to the point that it precipitated this coronary attack blocking the blood vessels that supply the heart with blood causing an undue dilation of the heart muscle."

On cross-examination he testified as follows:

"Q. If you had had information prior to writing your conclusion in your post mortem examination that the deceased had sometime after six o'clock the evening before he died engaged in repairing or attempting to repair some of the defendant's lines and in this activity had done some heavy lifting and had walked a distance of one to two hundred yards in snow approximately three feet deep while robed in heavy clothing, would you have considered that activity a contributing factor to the collapse of this heart? A. Why, yes, though they die laying in bed. That is a discussed question."

He also testified that a strain on the part of the deceased could have been a contributing factor in the acute thrombosis and that the activity in which the deceased had been engaged would have been a contributing factor in the collapse of his heart.

Another doctor testified in answer to a hypothetical question that a man in the condition McMillan was in, according to the testimony, should have been in bed taking care of himself, and his death was the result of overexertion under the condition he was in at the time. On cross-examination he testified that it was highly speculative to state specifically just what caused the death and that pneumonia puts a tremendous strain on the heart and that deceased going to the toilet might have precipitated the attack.

Another doctor testified in answer to a hypothetical question that the general effect of circumstances under which deceased died would be to cause collapse, and that the snow, cold, walking, lifting and exertion would aggravate this condition. On cross-examination he testified he doubted whether the deceased had pneumonia and that unless deceased was under great strain in lifting the wire the strain just prior to his collapse would be more apt to have caused it than getting into the truck and hour and a half before.

The examiner heard the above testimony and in his history of the case set it out about as given here. After findings as to the earnings and dependents of claimant, which are not disputed here, he found:

"That claimants failed to prove that Roy McMillan suffered personal injury by accident arising out of and in the course of his employment, which resulted in his death; therefore, award of compensation should be denied."·

From this award denying compensation the claimants appealed to the district court. That court, in accordance with the statute, proceeded to consider the record ' made before the examiner and made the following findings, among others:

"5. It is impossible to say from the evidence specifically just what precipitated the collapse or caused the acute dilation of the heart and chronic thrombosis following his pneumonia. One in the condition of Mr. McMillan should not have been undergoing even light exercise. The carrying out of the ashes, the lifting of the wire, and even walking would cause an intense strain on the heart of one in the condition of Mr. McMillan. . Any one of these acts would aggravate his condition and intensify the affliction, or contribute to or accelerate his death."

The court then made some findings as to the earnings and dependents of deceased. The court made a conclusion of law that the evidence failed to disclose that Roy McMillan suffered personal injury by accident arising out of and in the course of his employment, which resulted in his death and award of compensation was denied.

On appeal to this court claimant argues that the case should be controlled by *Carney v. Hellar*, 155 Kan. 674, 127 P. 2d 1196, and analogous cases where we have held that accidental injuries are compensable where the accident only served to aggravate or accelerate an existing disease or intensify the affliction or contribute to the death of the workman.

No rule of workmen's compensation cases is much better established than that the appeal to this court is limited to matters of law. We have no authority to weigh evidence and thereby reach a different conclusion as to the facts than was reached by the trial court. See *Brown v. Olson Drilling Co.*, 155 Kan. 230, 124 P. 2d 451. In order for a workman's dependents to recover compensation on account of his death his death must have resulted from an accident arising out of and in the course of his employment. His dependents must show that an accident transpired, that some mishap, some untoward and unexpected event occurred arising out of and in the

course of his employment that occasioned the injury. See *Taylor v. Swift & Co.*, 114 Kan. 431, 219 Pac. 516. In *Kearns v. Reed*, 136 Kan. 36, 12 P. 2d 820, the six elements of an accident as defined in *Gilliland v. Cement Co.*, 104 Kan. 771, 180 Pac. 793, and *Barker v. Shell Petroleum Corp.*, 132 Kan. 776, 297 Pac. 418, were (1) undesigned; (2) sudden; (3) unexpected; (4) usually of an afflictive· or unfortunate character; (5) often accompanied by a manifestation of force; and (6) time, place and circumstance.

There must be substantial evidence to support an award of compensation. It cannot be permitted to rest upon surmise or conjecture. See *Whitaker v. Panhandle Eastern P. L. Co.*, 142 Kan. 314, 46 P. 2d 862; also *Fair v. Golden Rule Refining Co.*, 134 Kan. 623, 7 P. 2d 70.

Confronted with the conceded fact that this man had died within a short time of when he had been working for respondent, the trial court examined the record made before the examiner with the idea that the claimant had the burden of proving that the death of deceased was occasioned by accident, as defined in our authorities. Having made this examination, finding No. 5 was the result. The trial court was unable to say from the evidence just what it was that precipitated the collapse or caused the acute dilation of the heart. The language of the trial court at the end of finding No. 5, wherein the court found that any one of the acts of McMillan, that is, the lifting of the· wire, the carrying out of the ashes, or even walking around would aggravate his condition and intensify the affliction that contributed to or accelerated his death, is nothing more than a finding that it would be possible for these things to have happened. It was not a positive finding such as is necessary to support a judgment that any one of these acts did intensify the affliction or contribute to his death. The conclusion that an award of compensation should be denied was the only logical result.

Following the rule that the right of this court on appeal is to consider questions of law, the judgment of the trial court is affirmed.

WEDELL, J. (concurring): I concur in the decision of the majority. Under the subject, "Conclusion of Law," the district court stated:.

"The evidence fails to disclose that Roy McMillan suffered personal injury by accident arising out of and in the course of his employment, which resulted in his death; therefore, award of compensation is denied."

In order to ascertain the real intent of the district court I construe the above statement together with its findings of fact. In my

view the so-called conclusion of law is really equivalent to the finding of an ultimate fact. It is in the nature of a summary of the evidence and discloses the effect the entire evidence had on the district court, the trier of the facts. There was some affirmative testimony to justify that *ultimate finding of fact*, or *conclusion*, irrespective of what term is chosen to characterize it. Certainly there was much testimony which cast serious doubt upon the question of whether the death of the workman arose out of his employment.

In order to reverse this decision we would be obliged to say, as a matter of law, that the ultimate finding of fact, or conclusion, reached by the district court was erroneous. Manifestly we cannot do that when the record as a whole justifies the decision of the district court.

The same principle of law would be applicable if the trial court had found that death arose out of the employment. Under such a finding this court could not reverse the trial court and say, as a matter of law, the trial court was bound to believe the death did not arise out of the employment. The rule on appellate review must of necessity operate the same way in either situation.

HARVEY, J., concurs in the foregoing opinion.

SMITH, J. (dissenting): I find myself unable to agree with the opinion of the majority. I place some stress on the fact that the trial court said in a conclusion of law that the evidence failed to disclose that McMillan suffered personal injury by accident arising out of and in the course of his employment, which resulted in his death. The whole of finding No. 5 must be examined in connection with this. The trial court did find as a matter of fact that it was impossible to say from the evidence just what precipitated the collapse. The court went ahead, however, and found as a matter of fact that one in the condition of Mr. McMillan should not have been undergoing even light exercise. The court said any one of the acts of Mr. McMillan, about which there was evidence, that is, the lifting of the wire, the carrying of the ashes, and even walking around would aggravate his condition and intensify the affliction, or contribute to or accelerate his death. It seems to me that this amounted to a positive finding that one of these things did cause his death. This conclusion is fortified in my mind by the

fact that the trial court did not find as a matter of fact that the evidence had failed to establish the accidental death. This was a conclusion of law. The whole record impels me to the belief that the trial court did not believe that one was entitled to compensation if what happened aggravated or intensified his affliction or if his affliction brought on the thing that happened. There is a well-established line of cases starting with *Gilliland v. Cement Co.*, 104 Kan. 771, 180 Pac. 793, running on through to *Harmon v. Larbee Flour Mills Co.*, 134 Kan. 143, 4 P. 2d 406, including *Carney v. Hellar*, 155 Kan. 674, 127 P. 2d 1196, which lays down that rule. See, also, *Holler v. Dickey Clay Mfg. Co.*, ante, p. 355 (this day decided). It was not necessary for the trial court to find specifically just what it was precipitated the collapse or caused the acute dilatation of the heart and chronic thrombosis. When the court found as a matter of fact that there was acute dilatation of the heart and that it happened while the man was working, then it was the court's duty to award compensation. I think the court erred in placing a greater burden on the claimants than the statute places on them. I am interested in this especially because I do not want to see an authority established whereby in cases such as this the claimants will have the burden of establishing precisely what it was that occurred and thus the effect of the long line of opinions to which I have referred be undone.

The trial court made all the necessary findings as to the claimants being dependents and the earnings of deceased so that this court could order an award.