No. 37,255
No. 37,294

CLARENCE N. WINKELMAN, *Appellee*, v. BOEING AIRPLANE COMPANY, a foreign corporation, *Appellant*.

(203 P. 2d 171)

Opinion filed March 5, 1949.

*John F. Eberhardt,* of Wichita, argued the cause, and *George Siefkin, George B. Powers, Samuel E. Bartlett, Andrew F. Schoeppel, Carl T. Smith, Stuart R. Carter, Thomas F. Woods* and *Robert C. Foulston, Jr.,* all of Wichita, were with him on the briefs for the appellant.

*John E. Boyer* and *Paul J. Donaldson,* both of Wichita, argued the cause, and *George J. Hondros* and *Harold T. Beck,* both of Wichita, were with them on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was a common-law action to recover damages for permanent loss of hearing. Plaintiff prevailed and defendant appeals.

Appellee was employed during the war by the appellant, Boeing Airplane Company, a corporation, to serve as an assistant instructor of guards at appellant's indoor pistol range. This service covered a period from June, 1943, to December 16, 1944. On the latter date pistol range practice was discontinued and appellee continued in appellant's employment as a guard in its lobby. Thereafter appellee returned to the pistol range for practice with other guards for a three-hour period on one day in July, 1945.

Appellant complains of alleged trial errors and asserts certain defenses to the judgment including the statute of limitations and that plaintiff's remedy was solely under the workmen's compensation act. It is conceded appellant was subject to and operated under the act.

We shall therefore first determine whether the instant injury is compensable under that act. It will be well to ascertain upon what theory appellee predicated his common-law action as reflected by his amended petition. His theory, in substance, was: The indoor pistol range as constructed and operated did not constitute a reasonably safe place for pistol firing; he was at close proximity and subject to constant and continuous explosions of .38 caliber ammunition for long periods of time; the volume, intensity and high pitch of gunfire explosions reverberated against the walls, ceiling and floor and continued for an abnormal length of time; that such continuous and extended periods of gunfire gradually, rather than at any defi-

nite time, impaired his hearing and that this did not constitute an accidental injury within the contemplation of the workmen's compensation act.

Briefly stated, appellee, insofar as is presently material, in substance, testified: After the first day he knew the firing made his ears ring but the ringing quit "after so long"; the effect was the same each day; he knew it would be but he did not know it would permanently impair his hearing; he first realized in the latter part of December, 1945, or in January, 1946, that his hearing was actually failing; he filed no claim for workmen's compensation.

The instant common-law action was filed April 23, 1947.

Doctor Ernest M. Seydell, appellee's witness, and a specialist in otolaryngology, in substance, testified: Appellee's condition was the result of the explosions at the pistol range; the more confining the place, the more trauma resulted to the system and the more likely it was to destroy the ear, the hearing; it was the constant repetition of the firing which did not give the workman's hearing a chance to come back; there had been a constant decrease in appellee's hearing; there are two types of deafness, one where the organ of hearing is destroyed at once and the other in which there is a gradual deterioration or loss of hearing; where the explosion is only moderate, the gradual constant hammering will cause a laying down of the white corpuscles in the blood; there is some scar tissue in the white corpuscles and the scar tissue ultimately destroys the organ of hearing.

The examination of Doctor Seydell further discloses the following:

"Q. Is this a disease or is it a trauma? A. It is a trauma.

"Q. In other words this would be caused, in your opinion, from a definite trauma he had on the job out there? A. Yes, sir.

"Q. And that trauma is what caused a deterioration of these little nerve ends as a I understood it? A. That is correct.

"Q. But the original source would be the trauma that occurred on the job, in your opinion? A. That is correct, yes, sir; in my opinion."

If the injury is within the purview of the compensation act the workman's remedy under that act is exclusive. G. S. 1935, 44-501, provides:

"Save as herein provided no such employer shall be liable *for any injury* for which compensation is recoverable under this act. . . ." (Our emphasis.)

See numerous decisions to that effect listed under the statute. The act applies to "personal injury *by accident* arising out of and

in the course of employment." (G. S. 1935, 44-501.) (Our emphasis.)

That under the evidence the injury arose out of the employment cannot be doubted. That the permanent injury had its origin and was all the result of what actually occurred in the course of the employment is likewise clear. The mere fact a workman is not, during the course of his employment, cognizant of his injury or the extent thereof, of course does not necessarily mean the injury did not result from an accident arising in the course of his employment. The act does not make knowledge of injury during the course of employment a condition precedent to the right of recovery. Here each day of firing, beginning with the first day, affected appellee's hearing and each act of firing thereafter contributed to the total result, the permanent impairment of his hearing. That appellee, assuming this was an accidental injury, would have had a claim for compensation during, or at least at the end of his employment, seems clear. Thereafter he might on rehearing have recovered for increased disability in accordance with the facts.

The only question remaining is whether the deafness was a personal injury "by accident" within the contemplated meaning of that phrase. Counsel for appellee earnestly contend it was not and counsel for appellant just as sincerely contend it was.

It is conceded recovery of compensation does not lie under our act for industrial disease unaccompanied and unrelated to any injury by accident. (*Chop v. Swift & Co.*, 118 Kan. 35, 37, 233 Pac. 800; *Echord v. Rush*, 124 Kan. 521, 525, 261 Pac. 820.)

There is a twilight zone between clear personal injury by accident, which is covered by the act, and disability, which is not covered by the act. No hard and fast rule can be laid down for cases falling within the zone referred to. Each case depends upon the peculiar facts involved. (*Hoag v. Laundry Co.*, 113 Kan. 513, 516-518, 215 Pac. 295.)

That the instant injury is of traumatic origin was clearly established. The traumatic deafness, employing the language of Doctor Seydell, resulted from the "constant hammering." Such hammering did not give the injury to the ear, the hearing, an opportunity "to come back."

Was that an accidental injury? In the early case of *Gilliland v. Cement Co.*, 104 Kan. 771, 180 Pac. 793, we said:

"The word accident does not have a settled legal signification. It does have, however, a generally accepted meaning, which is the same whether considered according to the popular understanding or the approved usage of language. An accident is simply an undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a manifestation of force." (p. 773.)

In the Gilliland case, *supra,* p. 773, and in the Echord case, *supra,* pp. 523, 524, we early warned against too literal an interpretation of the elements of the definition of an accident. The purpose of those warnings was to avoid a strained and technical meaning which would defeat the obvious intent and purpose of the act, namely, that industry should bear the expense of injuries to workmen occasioned by the employment.

Appellee argues the definition of an accident as stated in the Gilliland case, *supra,* has been consistently followed by this court, citing *Duncan v. Perry Packing Co.,* 162 Kan. 79, 174 P. 2d 78, and cases therein listed. That is a fair statement. We have, however, also clearly indicated that while the definition was correct under facts involved, it might not be entirely adequate under a materially different state of facts. (*Gilliland v. Cement Co.,* supra; *Echord v. Rush,* supra.) Likewise in *Murphy v. I. C. U. Const. Co.,* 158 Kan. 541, 148 P. 2d 771, where an award for injury resulting from frostbite was affirmed, we said:

"The rule is firmly established that the Workmen's Compensation Act is to be liberally construed. (*Chamberlain v. Bowersock Mills & Power Co.,* 150 Kan. 934, 96 P. 2d 684.) In line with that rule we have in numerous cases broadly construed the words 'by accident.' An important aspect of such an issue was considered in the recent case of *Peterson v. Safeway Stores,* ante, p. 271, 146 P. 2d 657. We there held again, following the leading case of *Gilliland v. Cement Co.,* 104 Kan. 771, 180 Pac. 793, that injury by a strain sustained in the performance of usual tasks performed in the usual manner may constitute an 'accident,' even though there be no event in the nature of an outside and intervening cause." (p. 548.)

The rule of liberal construction must, of course, be applied whether invoked by the workman or by the employer. (*Hoffman v. Cudahy Packing Co.,* 161 Kan. 345, 349-350, 167 P. 2d 613.)

For the moment let us, under the established rule of liberal construction, consider the definition of the word "accident" as stated in the Gilliland case. Appellee contends that in applying such definition we have said one necessary element of an accident is that it must be referable to a definite time, place *and* circumstance, citing *Echord v. Rush,* supra, and *Duncan v. Perry Packing Co.,* supra.

The precise point was not involved in the Duncan case but was involved in the Echord case. In the latter case we said:

"There must be a time, place or circumstance when the thing called an accident happened, took place or occurred." (Our italics.) (p. 524.)

In the Echord case the workman sought a compensation award on the ground he sustained injury by accident when breathing poisonous gases. He later died from brain fever. Recovery was denied. It should be noted there was no evidence of trauma at any time or place in that case, as in the instant case. That point was clearly emphasized and a Delaware case was cited and approved on the proposition that there is no recovery for industrial disease under our act when unaccompanied and unrelated to any injury by accident.

Appellee argues there is no evidence that injury or disability occurred to the workman after any one specific pistol shot and states that this ". . . is the crux of plaintiff's cause of action." It frankly should be conceded there was no evidence that any one particular shot alone produced permanent traumatic deafness. The substance of the evidence is that the constant and intensive firing and hammering which did not permit "the hearing to come back" produced the traumatic deafness. Clearly there was present impairment of hearing or there would have been no occasion to say the hearing was not permitted "to come back." Manifestly each pistol retort or explosion, at the time it occurred, caused some injury and contributed to the permanent injury. The proof of injury was probably as definite relative to time, place and circumstances as the nature of the case permitted. At least we think it was as definite as the particular circumstances required.

The statute does not mention the word "time" except that injury by accident must arise in the course of the employment. It did so arise. If injury occurring as the result of a single accident is compensable, surely we will not declare that injury resulting from a dozen or more of the same or similar accidents, all occurring in the course of the employment, is noncompensable. This last subject will receive further attention presently.

While we have said an accidental injury must be referrable "to the time, place or circumstances," and in some cases have said it must be referrable to "the time, place and circumstance" under which it occurs we have not required the workman to prove what

particular act in a series of successive contributing acts produced the injury. In the Gilliland case, *supra*, the workman suffered a pulmonary hemorrhage while breaking rock with a sixteen-pound sledge and while loading the rock into a car. He had been beating on a large rock shortly before he collapsed. The workman performed precisely the work he intended to perform but he did not expect the injury that followed. We admitted, "There was no direct evidence of extraordinary exertion suddenly displayed," *by any particular blow*. We concluded, however, "The evidence warranted a finding that the physical structure of the man gave way under the stress of his usual labor." (p. 777.) Other detailed facts will be found in that opinion. We held the facts clearly disclosed an injury by "accident" within the ordinary and popular sense in which the word "accident" is employed.

In *Barker v. Shell Petroleum Corp.*, 132 Kan. 776, 297 Pac. 418, a workman while riding a large four-wheeled maney or slip-down, drawn by a tractor, was severely jolted, jerked and jarred by the wheels of the maney going over the ends of the railroad ties, the track rails and loose four-inch pipe so that his back began to hurt before night of the first day. He continued to do the work part of the time for four more days. He discontinued all work in two weeks on account of pain in his back. He was found to be totally and permanently disabled with arthritis of the spine. This court concluded the workman had suffered an accidental injury. In discussing the precise point now at issue we said:

"It surely is not a question of pointing out the exact tie which caused the serious jolt, nor whether on the going or returning trip." (p. 782.)

"The injury in this case was the result of the severe successive jolts received on the first day of riding the maney." (p. 784.)

In the Barker opinion the court referred to the Gilliland case and stated:

"In the case last above cited, it was not the last blow or any particular blow with the sledge that caused the injury." (p. 783.)

In *Raffaghelle v. Russell*, 103 Kan. 849, 851, 176 Pac, 640, it was said:

"But it would never do to say that the courageous workman who sticks to his task notwithstanding his pain and injury is to be penalized for so doing." (p. 851.)

To the same effect is the Barker case, *supra.*

Was the accidental injury sudden, undesigned and unexpected? The elements of the word "accident" apply to the workman and not to the employer or someone else. (*Duncan v. Perry Packing Co.,* supra, p. 86, 88.) The elements refer to what happened to the workman although that may have resulted from the intentional performance of usual acts in the usual way. In other words, they refer to the resulting harm rather than to the cause thereof. (*Gilliland v. Cement Co.,* pp. 777, 778; *Echord v. Rush,* p. 524; *Hoag v. Laundry Co.,* p. 515, *omnia supra; Monson v. Battelle,* 102 Kan. 208, 170 Pac. 801.) And this interpretation of our statute accords with the view adopted in many other jurisdictions. (71 C. J. 576.) While some courts adopt a somewhat different view we think this is the sounder doctrine if the act is to be liberally and realistically construed to effectuate its true intent and purpose.

Here each shot and the effect thereof on appellee's hearing were sudden. The workman's own testimony discloses the resulting permanent injury from the repeated and successive shots was undesigned and unexpected. He believed the effect on his hearing would wear off "after so long." He did not expect the injury to be permanent. In the Gilliland case, *supra,* the pertinent principle was stated thus:

"He certainly did not intend to kill himself by breaking rock and loading cars at a price per car. He did not know, or in any event he was inattentive to, the limited power of his blood vessels to resist blood pressure aggravated by vigorous muscular effort. Out of this ignorance or miscalculation of forces came misadventure, and the term accident applies to what happened to him . . ." (p. 777.)

The foregoing statement constitutes an accurate summary of the doctrine early announced by the House of Lords. It was fully reviewed in the Gilliland case.

There are numerous cases involving varying circumstances in which recovery under the act has been allowed for injury arising out of and in the course of the employment although the total injury developed progressively and from a series of events, accidental in character. A few of them are *Selvage v. Burrell & Sons,* 1 K. B. 355, (1921), 13 B. R. C. 1010, affirmed in 90 L. J. K. B. N. S. 1340, 13 B. R. C. 1023; *Webb v. New Mexico Pub. Co.,* 47 N. M. 279, 141 P. 2d 333; *Harris v. Southern Carbon Co.,* 162 So. 430, (La. App., 1935); *Aldrich v. Dole,* 43 Ida. 30, 249 Pac. 87; *American Maize*

*Products Co. v. Nichiporchik,* 108 Ind. App. 502, 29 N. E. 2d 801; *Downey v. Kansas City Gas Co.,* 338 Mo. 803, 92 S. W. 2d 580; *Victory Sparkler Co. v. Francks,* 147 Md. 368, 128 A. 635; *Seattle Can Co. v. Dept. of Labor & Industries,* 147 Wash. 303, 265 Pac. 739. For present purposes it is sufficient to approve these decisions only on the point for which they are now cited.

The facts in the instant case differ materially from those in most, if not all, cases previously presented to this court. It is only natural there should be some isolated statements in some of our opinions, based upon facts there presented, which might appear partially inconsistent with the views herein expressed. All of the law on any subject cannot be written in a single opinion. Mr. Justice Brandeis in *Jaybird Mining Co. v. Weir,* 271 U. S. 609, 619, 70 L. Ed 1112, 1117, 46 S. Ct. 592, aptly stated:

"It is a peculiar virtue of our system of law that the process of inclusion and exclusion, so often employed in developing a rule, is not allowed to end with its enunciation and that an expression in an opinion yields later to the impact of facts unforeseen." (p. 619.)

It also may be well to state we are not called upon in this case to discuss the abstract questions whether deafness may be a disease or whether disease may be caused by trauma. Assuming traumatic deafness may in some sense properly be denominated an industrial disease, as it appears to be by some writers, the fact remains that here a portion of the man's physical structure was definitely broken down by accidental injury. For that injury recovery could have been had under our act. We think under such circumstances we would not be justified in denominating the injury solely and purely an industrial disease and thereby deny a workman recovery under our act. To deny recovery in this situation would not, in our opinion, constitute liberal, but strict and technical, interpretation of our act against a workman. Under our repeated decisions we are not permitted to give it such interpretation.

The various decisions cited in the able briefs of counsel for both parties have been fully considered. We shall not prolong the opinion.

The judgment is reversed.

ARN, J., not participating.