No. 38,171

MERLE H. KAUFFMAN, *Appellee,* v. CO-OPERATIVE REFINERY ASSOCIATION OF COFFEYVILLE, and EMPLOYER'S MUTUAL LIABILITY INSURANCE COMPANY, *Appellants.*

(225 P. 2d 129)

Opinion filed December 9, 1950.

*Aubrey Neale,* of Coffeyville, argued the cause, and was on the briefs for the appellants.

*Morris D. Hildreth,* of Coffeyville, argued the cause, and *Richard L. Becker,* or Coffeyville, was with him on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This is an appeal by respondent and its insurance carrier from an award in a workmen's compensation case.

The district court approved the findings of the commissioner that (1.) the injury was caused by accident; (2) the accident arose out of and in the course of the employment; and (3) the workman was entitled to recover certain medical, surgical and hospital expenses. The appeal is from those findings and the award made pursuant thereto.

Appellants recognize the established rule that on appeal in cases of this character our review on factual matters is limited to the inquiry whether there is substantial evidence to support the findings of the district court and not whether there is evidence which would sustain contrary findings.

Appellee was employed by respondent, Co-operative Refinery Association of Coffeyville. He entered respondent's premises on the morning of December 19, 1949, after passing a guard at the gate. He punched the time clock at eleven minutes of eight. He then went to the change house on respondent's premises, located about a block and a half from where he punched the time clock, to change his clothes preparatory for work, which began at 8:00 a. m. That was the hour the whistle blew to indicate the time for the commencement of work. The change house contained lockers, showers, benches to sit on, wash bowls, soap and other equipment incidental to a change of clothes before starting work and for a cleanup after work. Respondent furnished and maintained the change house, equipment and supplies at its own expense. It was, however, optional with the men whether they used the change house or changed their clothes at home. The workmen were ordinarily assigned specific jobs at the yard house by the foreman at 8:00 a. m.

Appellee had two previous hernia operations on the left side. That side was weak and he wore a truss, at times a double truss, when he did heavy lifting. While in the change house on the morning in question, December 19, 1949, appellee bent over suddenly to untie his shoes. As he did so he heard a gurgle and felt a sharp pain in his left side. He reached into his pants and felt a large knot. The abstract relates the witness said, "I sat down like this to get hold of the shoe," but the abstract does not reflect the manner in which he did so. He went to the yard office and saw Mr. Gottschalk, the yard foreman. When the foreman told him to take some men, naming them, to a job, appellee interrupted and advised the foreman, "I don't feel good, I am going home." The foreman said, "All right." Appellee then went to the general office of the respondent and, in substance, told Daisy Eaton he had bent over to tie his shoes and had a hernia pop out; that it would be necessary to have it reduced in a couple of hours; he was afraid he was "going to have to go to the hospital." Appellee stated he knew about being obliged to have it reduced in a few hours by reason of his former trouble with hernia. Miss Eaton replied, "That is too bad." Appellee was in a hurry to get to the hospital and walked out. He did not ask the company to do anything about the hernia at that time.

Miss Eaton, in substance, testified appellee did come to her office that morning to pick up a claim blank for his wife in order to take his wife to the hospital; appellee told her he was going home; his hernia had slipped out and he was going to see the doctor; appellee stated the hernia had to be put back within two hours or it would cause death; she communicated this information to Mr. Tourney, respondent's personnel supervisor.

Appellee admitted he asked Miss Eaton for a claim blank for his wife because he believed she was going to be in the hospital at Christmas and that he stopped to pick up the blank for his wife because he thought he would also be in the hospital and would not have an opportunity to come back to get the slip his wife would need.

Appellee thereafter went directly to the guard house, telephoned to his wife, told her what had happened and asked her to come out for him immediately. Upon reaching home he went to bed and his wife called Doctor Boese (now deceased) who arrived in about ten minutes. The doctor tried, without success, to put the hernia back and he, appellee, passed out. Doctor Boese arranged to take appellee to the hospital. He arrived there at about 9:15 a. m.

They gave him a spinal block and Doctor McMillian operated on him at 10:00 a. m. He told Doctor McMillian that when taking a physical examination for insurance he was advised he almost had a hernia on the right side, which felt weak; he asked Doctor Mc-Millian whether there was some way of fixing that, too, while he was under the anesthetic and the doctor operated on both sides.

Doctor J. D. McMillian, in substance, testified: By reason of the two previous hernia operations on the left side appellee had a weak wall there; appellee now had a strangulated hernia on that side and was in quite a bit of pain and there was considerable bulging; this was an emergency operation; he operated for double hernia, that is on both sides, in order to also remedy the weakness that existed on the right side; his opinion was that the hernia on the left side could, and did, occur in the manner stated by appellee.

Appellee also testified he had never told respondent's officers or employees or anyone else that he had a recurring hernia on the left side after the previous operations. He further testified he had experienced some soreness but there never had been a hernia, any protrusion, or anything like that.

The instant claim was one to recover compensation for the left hernia and not for disability, if any, resulting from weakness on appellee's right side. Appellants contended the hernia on the left side existed prior to December 19, 1949. Appellee's testimony was to the contrary. He admitted a weakness had existed on the left side but testified it had never developed into a hernia. The district court resolved the factual issue in appellee's favor. For purpose of review the finding is conclusive.

The workmen's compensation act prescribes no standard of health or physical perfection for a workman. (*Carney v. Hellar,* 155 Kan. 674, 127 P. 2d 496.) Accidental injuries are compensable where the accident only serves to aggravate or accelerate an existing disease, or intensifies the affliction. *Williams v. Cities Service Gas Co.,* 151 Kan. 497, 99 P. 2d 822; *Carney v. Hellar,* supra; *Workman v. Johnson Bros. Construction Co.,* 164 Kan. 478, 190 P. 2d 863.)

Was appellee's injury, the hernia, the result of an accident within the meaning of the compensation act? Appellants contend it was not and cite *Gilliland v. Cement Co.,* 104 Kan. 771, 180 Pac. 793; *McMillan v. Kansas Power & Light Co.,* 157 Kan. 385, 139 P. 2d 854; *Murphy v. I. C. U. Const. Co.,* 158 Kan. 541, 148 P. 2d 771; *Winkelman v. Boeing Airplane Co.,* 166 Kan. 503, 203 P. 2d 171. We shall not restate the facts in those cases. The elements of

the term "accident" are quite extensively covered in the Winkelman case and in others cited therein. In the Gilliland case it was said:

"The word accident does not have a settled legal signification. It does have, however, a generally accepted meaning, which is the same whether considered according to the popular understanding or the approved usage of language. An accident is simply an undesigned, sudden, and unexpected event, usually of an afflictive or unfortunate character, and often accompanied by a manifestation of force." (p. 773.)

Later in the same opinion it was further stated:

"He certainly did not intend to kill himself by breaking rock and loading cars at a price per car. He did not know, or in any event he was inattentive to, the limited power of his blood vessels to resist blood pressure aggravated by vigorous muscular effort. Out of this ignorance or miscalculation of forces came misadventure, and the term accident applies to what happened to him. . . ." (pp. 777, 778.)

While it is true appellee's left side was in a weakened condition he nevertheless continued in the employ of the respondent. Surely he did not intend to produce a hernia by bending over suddenly. True he knew his left side was weakened but he apparently did not think bending over suddenly, whatever the exact position of strain may have been at the moment, would result in the injury he sustained. The injury resulted suddenly, without design, and from force, pressure, which was too great for the weakened portion of his body to withstand. The injury was unexpected at the moment notwithstanding the fact he knew of his weakness.

The elements of the term "accident" must not be construed in a strict and technical sense but in a manner designed to effectuate the true intent and purpose of the compensation act. (*Winkelman v. Boeing Airplane Co.*, supra, and cases therein cited.) So construed we think the injury was accidental in character.

Did the accident arise out of and in the course of the employment as required by G. S. 1935, 44-501. Appellants contend it did not for the reason appellee's actual labors had not yet begun. Without repeating the facts previously narrated it is sufficient to say there are respectable decisions in some other jurisdictions which support appellants' contention. The supreme court of this state recognized those authorities quite early but decided to follow decisions holding the compensation act, when liberally construed, was broad enough to cover incidents of the employment. In *Corpora v. Kansas City Public Service Co.*, 129 Kan. 690, 284 Pac. 818, we held:

"Where an employee whose working day began at 7 a. m. arrived at his place of employment a few minutes prior thereto, registered his attendance, and went to a dressing room provided by his employer, and there sustained a fall and injury while putting on his overalls, from which injury and other infirmities he died, it is held that the accidental fall and injury were incidents of the employment and his dependent widow was entitled to compensation." (Syl. ¶ 3.)

The principle that the act is broad enough to cover incidents of the employment has been adhered to in a long line of decisions. (*Duncan v. Perry Packing Co.,* 162 Kan. 79, 88, 174 P. 2d 78, and cases therein cited.) Many others might be listed.

Appellants rely on G. S. 1935, 44-508 (k), which provides:

"The words 'arising out of and in the course of employment' as used in this act shall not be construed to include injuries to the employee occurring while he is on his way to assume the duties of his employment or after leaving such duties, the proximate cause of which injury is not the employer's negligence."

They argue the foregoing statute was not mentioned or considered in the Corpora case, *supra.* It is true the statute was not there considered. The reason probably was the claimant, as in the instant case, had already checked in for the day's work and was actually on the employer's premises at the time of the accident. Claimant there, as in this case, was not injured while on his way to such premises or after leaving his duties. The distinction between injuries occurring on the premises of the employer and those where the injury occurred on the way to the employer's premises has been clearly recognized. (*Monson v. Battelle,* 102 Kan. 208, 170 Pac. 801; *McDonnell v. Swift & Co.,* 124 Kan. 327, 259 Pac. 695; *Harrison v. Lozier-Broderick & Gordon,* 158 Kan. 129, 131, 145 P. 2d 147; *Abbott v. Southwest Grain Co.,* 162 Kan. 315, 176 P. 2d 839.)

We now reach the last complaint pertaining to medical, surgical and hospital expenses. Appellants argue (1) appellee made no claim to respondent he had sustained an accident; (2) he made no request for medical treatment; and (3) the expenses sought to be recovered were for a double hernia although only one hernia was claimed to constitute the present injury.

The evidence previously narrated with respect to what appellee told Miss Eaton (appellants' witness), together with her admission she relayed those facts to Mr. Tourney, respondent's personnel supervisor, are sufficient to disclose the employer had notice of the precise injury.

Touching contention (2) it is true appellee made no direct request for medical attention. The employer, however, was informed of appellee's condition and that he considered it sufficiently critical to require it to be corrected within two hours in order to avoid death.

G. S. 1947 Supp. 44-510 makes it the duty of the employer to provide the services of a physician or surgeon and such medical, surgical and hospital treatment, including nursing, medicines, medical and surgical supplies, ambulance, crutches and apparatus, as may be reasonably necessary to cure and relieve the workman from the effects of the injury. The statute also specifies the limitation as to allowances for such purposes. It further provides, in part:

"If the employer has knowledge of the accidental injury and refuses or neglects to seasonably provide the benefits herein required, the employee may provide the same for himself and the employer shall be liable for such expense subject to the limitations herein expressed. . . ."

Since appellee did not expressly request medical or other aid it probably cannot be said the employer refused to provide it. However, it will be observed the statute is not limited to a refusal. It also states ". . . *or neglects* to seasonably provide the benefits. . . ." (Our italics.) It must be conceded the employer was advised concerning appellee's urgent need for prompt attention and care. Miss Eaton frankly testified she relayed those facts to Mr. Tourney, the personnel supervisor. She did not say she failed to relay the message to Mr. Tourney promptly and Mr. Tourney did not testify.

It also will be noted the statute does not expressly require that a workman demand the employer provide the benefits. It says, "If the employer has knowledge of the accidental injury and refuses *or neglects to seasonably provide the benefits herein required*. . . ." (Our italics.) We also think the words "seasonably provide" must be interpreted and applied in accordance with the known urgency of the need. Here there was no response from the employer, no offer to assist. It was an emergency operation and the workman had it performed. In view of the workman's statement to his employer concerning the urgent need for prompt care and attention it seems to us it would require a rather strict construction of the statute to say the employer did not neglect to provide, or neglect to offer to provide, the benefits required. It does not follow, and what is here said must not be interpreted as meaning, that a request to the em-

ployer for medical, surgical or hospital care is never required. What is here said applies to the facts of this particular case and not to materially different facts.

The third contention under this heading involves the cost of the benefits which included the operation for a double hernia. We fail to find any separation of costs for a single and double hernia operation. It is true an award for such benefits must be based on evidence. (*Orozco v. Central Coal & Coke Co.*, 121 Kan. 690, 249 Pac. 604; *Brenn v. City of St. John*, 149 Kan. 416, 422, 87 P. 2d 546.) The total costs for ambulance service, the anesthetic, hospitalization and the operation were in the sum of $267.15. The surgeon's fee for the double hernia operation was only $125. Notwithstanding that modest fee it is probably true the fee for the operation would have been somewhat less if there had been an operation for only a single hernia. We would be inclined to say the proof as to this last item was inadequate except for the fact the record discloses the examiner, in referring to these various items of expense, inquired of appellants, "Is there any question about their being reasonable?" The answer of appellants' counsel was, "No."

The judgment is affirmed.

Price, J. (dissenting): While changing clothes in preparation for the day's work the workman bent over suddenly to untie his shoes. He then felt a sharp pain in his side, the result of hernia.

Assuming, but not conceding, that here the workman sustained an "accidental injury" within the meaning of the compensation act, I cannot agree that it arose *out of* the employment. It seems to me that the court's decision construes the phrases "out of" and "in the course of" (the employment) as being, for all practical purposes, synonymous, whereas each has a separate, well-defined meaning. In order for an injury to be compensable both requirements must exist. I concede that here the injury occurred "in the course of" the employment and that it can be said to be an "incident" of the employment, but how can it be said that it arose "out of" such employment?

Certainly there was nothing in the nature of his employment or occupation, or any exposure to which he was subjected, which caused the injury. In fact, I fail to see any *causal* connection whatsoever between the conditions under which the work was required to be performed and the resulting injury. I therefore dissent.