No. 44,660

WILLIAM T. HANNA, *Appellee*, v. THE EDWARD GRAY CORPORATION
and TRAVELERS INSURANCE COMPANY, *Appellants*.

(421 P. 2d 205)

Opinion filed December 10, 1966.

*Roscoe E. Long*, of Topeka, argued the cause, and *O. B. Eidson, Philip H. Lewis, James W. Porter, Charles S. Fisher, Jr., William G. Haynes, Peter F. Caldwell, R. Austin Nothern* and *Brock R. Snyder*, all of Topeka, were with him on the brief for the appellants.

*Reginald LaBunker*, of Topeka, argued the cause, and *George E. Mc-Cullough, W. L. Parker, Jr., Robert B. Wareheim* and *James L. Rose*, all of Topeka, were with him on the brief for the appellee.

The opinion of the court was delivered by

SCHROEDER, J.: This is a workmen's compensation case initiated by the workman due to a coronary occlusion suffered by him while at work. The workmen's compensation examiner granted an award which was affirmed by the director upon review. On appeal by the respondent and its insurance carrier, the district court affirmed the award of the examiner, as affirmed by the director, in favor of the claimant. Appeal has been duly perfected by the employer and its insurance carrier (hereafter referred to as the respondents).

The only question raised on appeal is the sufficiency of the evidence to support the trial court's finding that the coronary occlusion suffered by the claimant arose out of his employment.

On the 10th day of June, 1964, the claimant, William T. Hanna, a carpenter by trade, was working in his usual occupation making

curbing forms for a cooling tower on the second floor of the DuPont plant at Tecumseh. He was employed by The Edward Gray Corporation.

On the day in question the claimant and a co-worker had been making curbing forms on the first floor of the DuPont plant where their saw and lumber were located. These forms were made from 2 x 4, 2 x 6 and 2 x 8 lumber, varying in lengths up to 14 feet, and weighing from 50 to 150 pounds. After constructing the forms, the claimant and his co-worker carried them up a flight over 18 or 19 steps to the second deck of the plant where the curbing forms were set so the cement could be run. The claimant had made some 25 trips up the stairs carrying forms that morning and continued that work after lunch. He had been doing this same carpenter and laboring work from 8:00 in the morning to 12:00 noon, then took off a half an hour for lunch, and resumed the same kind of work until 2:30 in the afternoon, at which time he suffered a coronary occlusion.

This was the only day on the job that the claimant was required to do both carpenter work and the laboring of carrying forms. Both the claimant and his co-worker testified that the laborers on the job that day were "goofing off" and were not available to do the laboring work of carrying the forms. (The respondents' witnesses denied that claimant carried any forms on the day in question.)

When the claimant's heart attack occurred, he had just carried some of the curbing forms upstairs and was bending over wiring or nailing the forms together. At 2:30 on the afternoon of June 10, 1964, the claimant's symptoms were severe pains in his chest and arm that ran down the arm to the ends of his fingers, and his fingers felt like they went to sleep; he was weak and perspiration broke out. He sat down a little while on the curb and after a while felt a little better and finished out the day.

When the claimant arrived home that evening he was still having pain around his heart; he was awfully tired; he ate his supper and went to bed but did not sleep well that night. The next morning he did not go to work. His family physician was consulted when he returned to town on Monday (June 15, 1964) following the claimant's heart attack.

His physician, Dr. Joseph P. Bell, diagnosed the claimant's condition as resulting from a coronary occlusion, and put the claimant to bed for nine weeks immediately thereafter. At the date of the

hearing before the examiner the claimant was still under the care of Doctor Bell, taking medication and following a diet.

The claimant has never returned to his usual occupation as a carpenter or to any other occupation. Doctor Bell has never released the claimant to return to carpenter work or any work.

Doctor Bell testified the claimant had been a patient of his since June 22, 1962; that when he first saw the claimant, he had a complaint of mild weakness of the right arm and leg; that three days later when he saw him it was not present; that he had never treated the claimant's leg or arm; that he did find high blood pressure at that time and gave him medication to reduce it; and that he had seen him about two months prior to the attack in question when his blood pressure was slightly higher than normal.

Doctor Bell was the only physician who testified.

In a hypothetical question propounded by the claimant's attorney to Doctor Bell, a résumé of the facts heretofore stated was given, and the doctor was asked whether in his opinion, based on a reasonable degree of medical certainty, there was a causal connection between the work the claimant was doing on June 10, 1964, as related to him by the claimant, and the coronary occlusion, as disclosed by his examination and treatment of the claimant, and whether such work activity as described did or could have precipitated, aggravated, accelerated or contributed to the injury of the claimant. The doctor's anwer was as follows:

"This I can't answer; I don't know the answer; no one knows the answer. If the work was considerably in excess of what the patient ordinarily did, it could conceivably be the cause. If these be the facts, it may have precipitated the coronary occlusion. There is no way to accurately prove or disprove this except by experience and past history of other patients over the years."

The foregoing answer of Doctor Bell is the only expert testimony of a physician in the record relating to the causal connection between the work the claimant was doing and his coronary occlusion.

Doctor Bell testified that the claimant was still under his treatment and was seen regularly; that claimant was not able to work at his usual occupation as a carpenter, and due to the length of the disability, it was rather debatable whether he would again be able to work as a carpenter; that claimant was still unable to work although he could do moderate exercise such as walking to the grocery store a couple of blocks, and light work such as raking his yard. Doctor Bell testified that the claimant was permanently is disabled to a degree of 50% or more.

The fundamental question in this case is one of causation—whether the claimant has sustained the burden of proving there is some causal connection, recognizable by the law, between the work the claimant was doing and the heart attack which resulted in his injury, so that it can be said the injury "arose out of" the employment.

One of the most litigated areas in workmen's compensation cases has been whether a heart attack or heart failure sustained by a workman *arose out of his employment*. The fundamental rules to be applied on appellate review in such cases have been stated many times and are summarized in *Rorabaugh v. General Mills*, 187 Kan. 363, 356 P. 2d 796, at pages 366 and 367 of the official report, to which reference is made.

The instant case is corollary to, and should be considered in connection with, *Mein v. Meade County*, 197 Kan. 810, 421 P. 2d 177, where general rules to which this court adheres in heart cases are discussed and elaborated, and to which specific reference is also made.

It is not disputed under the decisions of this court that if a workman's physical structure gives way under the stress of his usual labor, the injury resulting may be classified as an "accident" within the meaning of the workmen's compensation act, and compensation awarded. To come within the foregoing rule on the facts in this case the claimant has the burden of proving not only that he suffered a heart failure while working, but that the heart failure was occasioned by or due to the work which the claimant was doing. In other words, the claimant must prove that the heart failure arose "out of" his employment with respondent. The injury must arise because of the employment, or in some reasonable way be traceable to it. The injury must in some sense be due to the employment. (*Cox v. Refining Co.*, 108 Kan. 310, 322, 195 Pac. 863; *Neff v. Henry Wagner Transport Co.*, 177 Kan. 738, 743, 281 P. 2d 1109; and *Whitely v. King Radio Corporation, Inc.*, 190 Kan. 439, 442, 375 P. 2d 593.)

Under the workmen's compensation act the rule is that the injury arises *out of the employment* when there is apparent to the rational mind, upon consideration of all the circumstances, *a causal connection between the conditions under which the work is required to be performed and the resulting injury*. (*Rorabaugh v. General Mills, supra*, and authorities cited therein.)

The respondents concede that viewing the facts in the light most favorable to the claimant, the evidence shows that the claimant suffered a heart failure, and it occurred while he was working. But they argue there is absolutely no evidence that the work *caused* the heart failure to occur. In this connection, they point to the testimony of Doctor Bell and argue there should be a degree of certainty which has been described by the court as "a reasonable medical certainty" or "a probability." They argue mere "possibility" or "conceivability" is nothing more than medical conjecture or speculation and wholly inadequate to support any proposition. (Citing, *McMillan v. Kansas Power & Light Co.*, 157 Kan. 385, 389, 139 P. 2d 854; *Rorabaugh v. General Mills*, supra; *Jones v. Lozier-Broderick & Gordon*, 160 Kan. 191, 160 P. 2d 932; and *Whitaker v. Panhandle Eastern P. L. Co.*, 142 Kan. 314, 46 P. 2d 862.)

The point in question was recognized by the workmen's compensation director in his order affirming the examiner's award where he said:

"Although the director and the examiners would prefer to have medical evidence in the record which indicate that in the opinion of the testifying physicians the work of the claimant did or did not contribute to his accident, such evidence is not always available, as in the present case, where the only medical in the record indicates that in the opinion of the treating physician he is not sure whether or not the claimant's work precipitated his heart attack. When such a situation exists examiners and the director must look to other testimony in the record to determine if there is a causal connection between the claimant's work and his accident. Our Supreme Court has said on several occasions that accidents need not be proved by medical testimony, but may be proved by other competent evidence. A reading of the record herein leads the director to conclude that the examiner was correct in his finding that the claimant has sustained the burden of proving that he suffered an accidental injury arising out of and in the course of his employment for the respondent on June 10, 1964."

The examiner found the record contained substantial testimony that the work claimant was doing on June 10, 1964, was unusually strenuous.

The issue in the instant case, stated in its simplest form, is whether a claimant who suffers a coronary occlusion while at work is required to prove a causal connection between his work and the coronary occlusion *by the expert testimony of a physician.*

Here the examiner, the director of workmen's compensation, and later the district court, all found, in spite of inconclusive expert

medical testimony, that the work the claimant was doing caused the coronary occlusion.

The respondents argue heart cases are to be distinguished from other accidental injury cases. (See, *Bender v. Salina Roofing Co.*, 179 Kan. 415, 295 P. 2d. 662; and *Kauffman v. Co-operative Refinery Assn.*, 170 Kan. 325, 225 P. 2d 129.) They argue the distinction lies in the extent of the court's factual knowledge of medical causation in heart cases, and its need for authoritative and scientific method and opinion in order to determine the question of causation. The respondents argue in their brief with respect to heart disease and heart injuries as follows:

". . . The extent of common medical knowledge concerning the cause of a heart failure in any particular person at a particular time is extremely limited. Heart disease and heart injury is one of the major causes of disability and death today. Any medical book will reveal that there are numerous causes or factors which may precipitate coronary occlusion and resulting heart failure at a particular time. Excitement, nervous tension, diet, anxiety, trauma, smoking, or eating are only a few of the numerous factors which may precipitate a heart failure. Often, an occlusion may occur while the victim is at complete rest and many physicians feel that coronary occlusions or heart failure occur on a completely random basis. (See *Lawyers Medical Cyclopedia*, Vol. 5, Sect. 34, 39, et seq., p. 147, The Allen Smith Co., Indianapolis, 1960, and *Your Heart, A Hand book for Laymen*, Pages 129 et seq., by H. M. Marvin, past president American Heart Association, Doubleday and Co., Inc., Garden City, New York, 1960). Certainly, physical effort may in some cases be a precipitating cause for heart failure. It is a possibility, just as the numerous other causes or factors may be possibilities, wtih respect to a particular person. But the fact that a man may be engaged in heavy physical labor at the time of a heart attack does not mean that the physical effort was the cause of his injury. In the area of heart failure and heart disease, there is no established medical proposition which holds that physical effort is always the cause of heart failure if the victim has been doing strenuous physical labor. If this proposition was a medical fact, Doctor Bell, the physician called to testify in this case, would have had no difficulty in determining the cause of appellee's [claimant's] heart failure. Yet, Doctor Bell quite honestly answered that in this particular case he did not know whether the physical effort was related or not. In several previous decisions of this Court it has been clearly illustrated that the strenuous labor which a workman has been doing may have nothing to do with his heart failure. In *Rorabaugh v. General Mills*, supra, [187 Kan. 363, 356 P. 2d 796] a claimant worked all morning loading a railroad box car with 100 pound sacks of seed. The mere fact that he had been engaged in heavy physical labor did not prove that his work had caused the heart injury. In *McMillan v. Kansas Power & Light Co.*, supra, [157 Kan. 385, 139 P. 2d 854] an award of compensation for heart failure was denied where the claimant had been engaged in emptying ashes, in loading some wire which weighed over 100 pounds in a truck, and had walked along a power

line at a time when it was snowing and cold. In the case of *Transmeier v. Blaw-Knox Construction Co.*, 191 Kan. 321, 380 P. 2d 322, the claimant, a common laborer whose work involved picking up debris and throwing it into a truck, died while in the process of scraping some paper together with a shovel. The award of compensation was denied because there was no showing that the work caused his heart failure. In *Kafka v. Edwards*, 182 Kan. 568, 322 P. 2d 785, the claimant's death occurred from a coronary thrombosis within a few minutes from the time he loaded his truck with cattle and drove it some 300 feet away from the loading chutes. An award of compensation was denied.

"In each of these cases there was hard physical labor which was followed by a heart failure and yet there was found to be absolutely no connection between the work and the injury. Our point is that it cannot be assumed as a medical fact that strenuous physical work is the cause of a heart failure simply because the victim happened to have been doing such work. Yet in this case, that is exactly what the Court so assumed. When Doctor Bell stated that he was unable to determine whether or not the work had any connection with the heart attack, the Court then took it upon itself to make such a determination. Without any medical basis, the Court undertook to answer the very question of medical causation that even a trained physician who had treated the patient could not answer.  .  .  .

.  .  .  .  .  .  .  .  .  .  .  .  .  .  .

".  .  . It seems ludicrous to call for an expert's judgment on whether the unusual work of the appellee [claimant] caused his heart difficulty, and then turn right around and hold that such a judgment or opinion isn't necessary, at the very time that the expert, with all his training, is unable to give any sort of answer which would be more than mere speculation. *In effect, the Court in this case purported to answer a medical question which even a trained medical doctor couldn't answer.* It based its answer upon what it assumed to be a medical fact, i. e. that if a man is doing unusual work, his heart attack is caused by his work. This was an erroneous assumption. The fact that a man is doing an unusual amount of work and suffers a heart failure is not substantial evidence that the work caused the injury. The happening of a heart attack while working is not proof of what caused it.  .  .  ."

The precise question here presented has not been decided by this court in relation to heart cases. All of the cases above, cited by the respondents in their argument, are heart cases in which the claimant was denied compensation. In other words, the trial court found the heart failure did not arise out of the workman's employment, and the court's inquiry on review was directed only to evidence which tended to support the findings of the trial court. It is to be noted the testimony of the medical experts as to causal connection in *Rorabaugh v. General Mills*, supra, and *Transmeier v. Blaw-Knox Construction Co.*, 191 Kan. 321, 380 P. 2d 322, is not in harmony. That is, in the same case one expert medical witness

will testify in his opinion there is a causal connection between the heart failure and the work the claimant was doing, and another expert medical witness will testify in his opinion there is no causal connection. Under such circumstances the trial court is in a position to give credence to the medical testimony of one or the other theory and come to a different result in a given case, depending on which theory it believes. (See, also, *Juergensen v. Isern Drilling Co.*, 197 Kan. 804, 421 P. 2d 11.) If the expert medical witnesses cannot agree, who is to decide the case? Obviously, the court must make the decision, and by law it is qualified to do so.

Plausible as the respondents' argument may seem, the dilemma in cases of this type is the divergent medical views concerning heart cases. For example, it would not have been difficult on the facts in the instant case to find a medical expert witness to testify in his opinion, as they have in many other cases, that the coronary occlusion suffered by the claimant in the instant case was probably caused by the work which he was doing. This would have been within the realm of reasonable medical certainty. For example, consider the facts in *Mein v. Meade County*, supra, and *Juergensen v. Isern Drilling Co.*, supra. We hasten to add, however, that neither the trial court nor this court on review is empowered to look beyond the evidence in the record in any given case it is called upon to determine. The issue of law to be decided is whether in workmen's compensation cases the examiner, the director and the trial court are permitted to look in heart cases beyond the expert medical testimony in the record to determine whether there is a casual connection between the work the claimant was doing and the heart failure.

In the past the Supreme Court of Kansas when specifically confronted with the issue here presented in workmen's compensation cases has not required the trial court, or fact-finding body, to confine its consideration of a workman's injury to the testimony of exper medical witnesses.

In *Bull v. Patti Const. Co.*, 152 Kan. 618, 627, 106 P. 2d 690, the court held the findings as to duration of disability of a workman need not rest solely upon medical testimony. It was said in this state, unlike some states, it is not essential that duration of disability or incapacity be established by medical testimony.

A case quite similar to the facts in the instant case, except that it

involved a pulmonary hemorrhage and not a heart failure, is *Gilliland v. Cement Co.*, 104 Kan. 771, 180 Pac. 793. There a workman's employment required him to break rock in a quarry with a 16-pound sledge and load the rock into a car, which was hard work. At noon the workman was in apparent good health and spirits, and ate all of the lunch which his wife brought to the quarry for him. In the afternoon, while at his work place, and shortly after he was seen beating a large rock with his sledge, he suffered a pulmonary hemorrhage, from which he died before medical aid could reach him. He had been working in the quarry for several months, and before that had worked for three years in the sacking department of a cement plant, an exceedingly dusty place. It was held the facts stated indicated injury by accident, and injury arising out of the employment, within the meaning of the workmen's compensation act. The only physician called to testify in that case testified in all material respects the same as the physician in the instant case. A hypothetical question was put to the physician reciting the facts and he was asked what, if any, effect such conditions would have to produce a hemorrhage; whether it would or would not produce a hemorrhage. He answered: " 'I think a person who had worked for three years in that sacking department could expect almost anything from it.' " (p. 772.) When asked whether work in the quarry, breaking rock with a 16-pound sledge, and loading it, would be likely to cause the hemorrhage, the doctor answered: " 'It might possibly do it.' " (p. 772.) He was further asked: "Q. In your judgment would it have a tendency to do it? A. Yes, sir, I think so.' " (p. 772.)

In making reference to the doctor's testimony the court, speaking through Mr. Justice Burch, said:

" . . . The jury might not have considered they derived much enlightenment from the physician's very indefinite statement that the workman might have expected almost anything after working in the dust of the defendant's sacking department for three years. Certainly he would not expect typhoid fever from cement dust. The evidence warranted a finding that the physical structure of the man gave way under the stress of his usual labor. He certainly did not intend to kill himself by breaking rock and loading cars at a price per car. He did not know, or in any event he was inattentive to, the limited power of his blood vessels to resist blood pressure aggravated by vigorous muscular effort. Out of this ignorance or miscalculation of forces came misadventure, and the term accident applies to what happened to him, as clearly as it would apply to what happened to the car had it broken down under the assumed circumstances.

"The defendant insists that the workman died of disease; that is, the injury did not arise out of the employment. *The question was one of fact, and should have been submitted to the jury.* . . ." (pp. 777, 778.) (Emphasis added.)

The substance of the foregoing decision is that a determination of the factual issues—whether the injury arose out of the employment —need not be confined to a consideration of the testimony of the medical expert witness, which standing alone was inconclusive, but may include consideration of other testimony in the case as well.

Medical science has not developed to the extent that it can diagnose human ailments with the exactitude of the mathematician, and a requirement that the physician testifying should be required to state with certainty the cause of a claimant's condition, after a hypothetical case has been submitted to him, would be supposing an exactness in medical science to which its most learned followers have not yet attained. (*Son v. Eagle-Picher M. & S. Co.*, 144 Kan. 146, 58 P. 2d 44.) Necessarily, there is an element of uncertainty and speculation in the formulation of expert opinion on the mysterious functioning of the human body, and physicians are hesitant to express a positive opinion, but absolute certainty is not required to support an award in workmen's compensation cases.

Perhaps it has been a reluctance of the courts to thrust upon victims of industrial accidents the uncertainties of medical science that has led to the rule which permits consideration of lay testimony, together with the testimony of expert medical witnesses, to resolve issues in workmen's compensation cases relating to the injury of workmen and the causal relation of such injury to the employment. (See, *Barr v. Builders, Inc.*, 179 Kan. 617, 296 P. 2d 1106.)

On the 3rd day of January, 1966, the trial court in the instant case found:

"1. That the record contains substantial testimony that the work William T. Hanna, claimant, was doing on June 10, 1964, the date of his accident, was unusually strenuous and that the testimony of Dr. Joseph P. Bell, the treating doctor, is sufficient when considered with the other testimony in the record to establish a causal connection between the work the claimant was doing in the course of his employment and his accidental injuries."

We hold the trial court was entitled to consider the testimony of the medical expert in this case, together with lay testimony in the record, to determine whether there was a causal connection between the work the claimant was doing in the course of his employment

on the day in question and his accidental injuries, and it did not err in making the foregoing finding which is supported by substantial evidence.

The judgment of the lower court is affirmed.