No. 42,464

Eileen Bohanan, Widow, and Guardian of John Steven Bohanan, Leon Hyle Bohanan, and Mary Jo Bohanan, Minor Dependents of Joseph H. Bohanan, Deceased, *Appellees,* v. Schlozman Ford, Inc., and Universal Underwriters Insurance Company, *Appellants.*

(366 P. 2d 28)

Opinion filed November 10, 1961.

*Gerald L. Rushfelt,* of Kansas City, argued the cause, and *J. Milton Sullivant, Lewis C. Smith, Clifford T. Mueller* and *John R. Oliver,* all of Kansas City, were on the briefs for the appellants.

*Everett Fritz,* of Kansas City, argued the cause, and *Frank Menghini,* also of Kansas City, was on the briefs for the appellees.

The opinion of the court was delivered by

Wertz, J.: This action was brought by a workman's dependents to recover compensation for his death under the provisions of the workmen's compensation act (G. S. 1949, Ch. 44, Art. 5, as amended). Both the workmen's compensation commissioner and the trial court made findings of fact in favor of claimants (appellees)—the widow and the minor children—and allowed compensation. Respondents (appellants) bring the case here and contend

the trial court erred in finding there was substantial evidence to support the finding that the death of decedent arose out of and in the course of his employment with respondent.

A brief résumé of the pertinent facts follows. At the time of his death Joseph Bohanan was forty-one years of age, married, and the father of three minor children. He was employed, and had been for seven months, as a mechanic by respondent Schlozman Ford, Inc. Respondent's shop foreman stated that decedent was about as dependable a person as ever worked for him; at no time did deceased ever complain about feeling bad or feeling sick; he was on the job every morning at 7:30—one could set one's watch by the time decedent got in; and that during the seven months he had only one day off to attend to his private business.

The evidence further disclosed that decedent reported for work at 7:30 a. m. on June 22, 1959, and performed his labors as a mechanic for respondent between the hours of 8:00 and 12:00 noon on that day until he collapsed while eating lunch on respondent's premises at approximately 12:05 p. m. Decedent was working on a Ford automobile, putting rings and bearings in the car. The work he was performing required more exertion than his usual work in that he was working under and on top of an automobile which had been brought to respondent for repair by the owner, who had done some work on it, and who had placed rings, which were too large, on the pistons. The decedent shoved the pistons in. The rings being too large, he was having trouble getting them out, and was getting up and down more than was ordinarily required in his work.

When he reported to work in the morning he complained of not feeling too well, and later told respondent's service manager, Orville Green, that he did not feel very well but did not want to go to a doctor. During the morning the deceased was sick at his stomach, and on one occasion went to the back door. At noon, the regular lunch hour, he and a fellow employee, John Gulich, sat down for lunch on the premises, as was their usual custom. Decedent suddenly lost his facial color which prompted Gulich to remark, "Joe, if I looked as bad as you, I would go home." Decedent started to get up from his seat, but fell over onto the floor and collapsed at 12:05 p. m., and died en route to the hospital.

Dr. Johnson testified he was of the opinion that decedent had definite evidence of coronary disease, definite evidence of myocardium damage of an acute type and that he was, in fact, suffer-

ing from incipient myocardial infarction with histological evidence of myocardial damage, and that whether he was aware of it or not, any activity that he would have engaged in, including certainly his work, would have aggravated the situation, and did so. He further testified that in his opinion the decedent's performance of labor on the morning in question was the actual cause or contributed to the cause of his death.

Dr. Day testified that since this man had a myocardial infarction any amount of work-effort or exertion would exaggerate, increase, or hasten his death, and that there was a causal connection between the actual performance of the labor and his death.

Dr. Steinzeig testified that a myocardial infarction caused deceased's death, and the fact that he continued the performance of labors after he suffered this myocardial infarction could have and did contribute to the death of the decedent.

Dr. Manley testified that the performance of duties as an automobile mechanic and the effort and exertion in the usual performance of labor very definitely contributed to this man's death.

Respondents state in their brief that the evidence, particularly the medical testimony, is unanimous and undisputed that decedent had a bad heart for a period of years, that he had suffered an earlier coronary thrombosis and infarction prior to commencing his work, and that any exertion whatsoever would contribute to his death.

The trial court found that the decedent's physical structure gave way under the stress of his labor; that the strain and exertion of decedent's work aggravated his existing heart condition, contributed to, and had a causal connection with, and proximately caused the heart attack which resulted in his death on the day in question; and that the decedent met with personal injury by accident arising out of and in the course of his employment by respondent resulting in his death.

Did the record show or tend to show decedent's death was a result of accidental injury arising out of and in the course of employment? It is a well-established rule in this state that accidental injuries are compensable where the accident only serves to aggravate or accelerate an existing disease, intensifies the affliction, or contributes to the death of the workman. (*Carney v. Hellar*, 155 Kan. 674, 677, 127 P. 2d 496; *Workman v. Johnson Bros. Construction Co.*, 164 Kan. 478, 190 P. 2d 863; *Johnson v. Skelly Oil Co.*, 181 Kan. 655, 656, 312 P. 2d 1076; *Strasser v. Jones*, 186 Kan. 507, 511, 350 P. 2d 779.)

The term "personal injury" as used in our workmen's compensation act (G. S. 1949, 44-501) is generally construed as meaning any lesion or change in the physical structure of the body, causing damage or harm thereto, so that it gives way under the stress of a workman's usual labor; and, it is not essential that the disorder be of such character as to present external or visible signs of its existence. (*Pinkston v. Rice Motor Co.,* 180 Kan. 295, 303 P. 2d 197; *Thuillez v. Yellow Transit Freight Lines,* 187 Kan. 618, 358 P. 2d 676.)

The term "accident" as used in the same statute was long ago construed and applied by Mr. Justice Burch, speaking for this court, in *Gilliland v. Cement Co.,* 104 Kan. 771, 180 Pac. 793, and consistently followed since that time, as meaning an occurrence or event which is undesigned, sudden and unexpected, usually of an afflictive or unfortunate character and often, but not necessarily, accompanied by a manifestation of force. (*Pinkston v. Rice Motor Co.,* supra; *Thuillez v. Yellow Transit Freight Lines,* supra.)

Only recently in the Thuillez case we again reiterated, without deviation, the elementary, long-standing rule of this court that coronary occlusion, coronary thrombosis, cerebral hemorrhage or heart failure-acute, which resulted in death or disability to a workman, was personal injury by accident when it arose out of and was received in the course of employment.

Did the accident arise out of the workman's employment? The phrase "out of employment" points to the cause of origin of the accident and requires some causal connection between the injury and the employment. In determining whether there was a causal connection between the work done and the injury suffered, we must, of necessity, consider the existing physical condition of the workman at the time of the injury. An injury arises out of employment if it arises out of the nature, conditions, obligations, and incidents of employment. (*Carney v. Hellar,* 155 Kan. 674, 677, 127 P. 2d 496; *Pinkston v. Rice Motor Co.,* supra [p. 302]; *Workman v. Johnson Bros. Construction Co.,* supra.)

If a workman's existing physical structure, whatever it may be, gives way under the stress of his usual labor, his death is an accident which arises out of his employment. In *Gilliland v. Cement Co.,* supra, it was stated, "An accident arises out of the employment when the required exertion producing the accident is too great for the man undertaking the work, whatever the degree of exertion or the condition of health . . ." It was further stated, "It is not

material that the workman's blood vessels were weakened by disease, or that he was predisposed to hemorrhage because, for example, he had breathed the dust of the sacking department for three years. The statute establishes no standard of health for workmen, entitling them or their dependents to compensation, and if the added factor of physical exertion in the employment were required to effect the lesion, and did so, the injury arose out of the employment."

Did the accident occur in the course of his employment? The phrase "in the course of his employment" simply means that the injury happened while the workman was at work in his employer's service. The phrase relates to the time, place and circumstances under which the accident occurred. (*Carney v. Hellar,* supra [p. 677], and *Pinkston v. Rice Motor Co.,* supra [p. 310].)

After an examination of the entire record, and without reiterating, the evidence is undisputable that deceased met with personal injury by accident due to the strain and exertion of his work which aggravated his existing heart condition, contributed to, had a causal connection with, and proximately caused the heart attack which resulted in his death. It is immaterial that his death did not occur until he was en route to the hospital.

The evidence was sufficient to support the findings of the trial court that the injury resulting in the death of decedent arose out of and in the course of his employment with respondent. The judgment of the trial court is affirmed.

It is so ordered.