43,712

RUBY ANN GEURIAN, widow, and guardian of WILLIAM GUS GEURIAN, a minor, dependent of William Gus Geurian, Sr., deceased employee, *Appellees,* v. KANSAS CITY POWER & LIGHT COMPANY, *Appellant.*

(389 P. 2d 782)

Opinion filed March 7, 1964.

H. *Thomas Payne*, of Olathe, and *William H. Woodson*, of Kansas City, Missouri, argued the cause and were on the brief for the appellant.

*Herman M. Swafford*, of Kansas City, Missouri, argued the cause, and *H. S. Roberts*, of Kansas City, and *John J. Alder*, of Kansas City, Missouri, were with him on the brief for the appellees.

The opinion of the court was delivered by

Schroeder, J.: This is an appeal in a workmen's compensation case by the employer from an award of death benefits to the dependents of a deceased workman, who died of a heart attack which is described in the death certificate as a myocardial infarction.

The primary question is whether the record contains substantial, competent evidence to support the findings of the district court.

The claimant is the widow of William Gus Geurian, Sr., hereafter called Geurian, and the duly appointed guardian of their minor son. The claimant and her son were dependent upon Geurian at the time of his death on November 5, 1958.

The parties stipulated to essential facts which were not in issue, among which was that the parties were governed by the workmen's compensation act of Kansas. Other stipulations need not be stated.

The claim for compensation, among other things, gave the date of the accident as October 15, 1958, at 1:30 a. m.; the date of death as November 5, 1958; and described how the accident occurred as follows: "Strain and over-exertion in making service call as trouble-shooter and being jolted and jarred in service truck."

Geurian was an employee of the Kansas City Power & Light Company (appellant) from 1946 until his death, starting as a

groundman, then working as an apprentice lineman, then as a journeyman lineman, and then as a troubleshooter for a year or so immediately before his death. In addition, he worked as an inspector and on other light jobs created for him by the appellant for a period of time following a heart attack on October 23, 1954. For about a year following a heart attack on October 23, 1954, he was under the care of a company doctor and had periodic EKG's. Thereafter, he was under the care of and had periodic EKG's by Drs. Hibbard and Ballard, heart specialists in Kansas City, Missouri, for a period of time, his last consultation with them before entering St. Luke's Hospital on October 15, 1958, being three weeks before he entered this hospital.

Between the time he last saw the company doctor and three weeks before he entered the hospital, he complained to his wife of pain at least once a month after heavy labor. During the three-week period immediately preceding his entry into the hospital on October 15, 1958, his symptoms increased and almost every day included pains through the chest, numbness in both arms and a burning sensation all through the chest and vomiting. However, he did not miss any time from work during this three-week interval.

On Tuesday morning, October 14, 1958, when Geurian came home after his midnight to 8:00 a. m. shift, he complained that he did not feel well and that he had felt pain all evening. He felt bad all morning and napped on the divan. At 10:00 a. m. he began feeling much worse and decided to see a doctor, and at 11:00 a. m. called and made an appointment with E. C. Altenbernd, M. D., a general practitioner. About 12:30 p. m. he vomited. He went to Dr. Altenbernd's office for his first visit in the afternoon. At that time he complained of substernal pain under the breast bone and pain running down the left arm, particularly on the inner aspects. This had been going on approximately three weeks. He gave a history of a coronary some three or four years previously. Dr. Altenbernd stated that his examination revealed irregularities of the heart, normal blood pressure and normal pulse rate; that he then believed Geurian was having some circulation problems with the arteries of his heart or what normally would be called angina, and that the muscles of the heart were under a certain amount of abnormal stress.

Dr. Altenbernd wanted to hospitalize Geurian at that time, but Geurian refused. He then told Geurian, "the next best thing he could do was give him medication to help circulation," the medication being nitroglycerin, and he told Geurian to go home and go to

bed and to be sure and report to his own doctor the following morning.

After returning home from Dr. Altenbernd's office Geurian was sick the entire evening, was pale and still had chest pains and took a nitroglycerin pill because of company they were having for the evening.

At midnight that evening Geurian reported to work at the company's Overland Park garage where he joined a fellow workman named Leroy Stocks. Stocks believed Geurian was not feeling well when he came to work, and suggested he go home if he did not feel well, but Geurian did not go home. Shortly after 1:00 a. m. on October 15, 1958, Stocks left the garage driving the company's 1½ ton Chevrolet ladder truck with Geurian as a passenger. Both Geurian and Stocks worked for the appellant as troubleshooters. While away from the company's garage in the truck Stocks stopped five times and changed street lights, but Geurian did not perform any labor and did not help in any way at all, but just sat in or was lying in the front seat of the truck. Stocks stopped the truck three other times, the first being at Highway 10 and Nieman Road when they talked with a policeman and where Stocks noticed Geurian took a pill; the second at Merriam, Kansas, where Geurian vomited and became white after vomiting; and the third at 71st and Antioch where Geurian got out and vomited and laid down at the side of the road for not more than three to five minutes. Stocks did not help Geurian back into the cab of the truck as he was able to get in by himself. Geurian, who had worked regularly with Stocks for over a year, had made no complaints of any illness to Stocks in the two-week period prior to that evening. Stocks drove approximately ten miles, all in Johnson County, before returning to the garage at around 3:00 p. m. so Geurian could get home.

On the previous shift Geurian had performed all of his duties which were "pretty well routine, just changed a few street lights."

The company ladder truck in which Geurian was riding on October 15, 1958, was described by two witnesses who had ridden in it on other occasions as being a rough-riding truck, but no more rough-riding than any other truck.

After being returned to the garage, Geurian drove his own automobile home, arriving there sometime between 3:00 and 4:00 a. m. He told his wife he was very sick, whereupon she helped him to bed. He was very short of breath, was pale and in terrific pain, and between 4:30 and 4:45 a. m. claimant called Dr. Altenbernd

who prescribed relief measures and told claimant to check Geurian's symptoms further and call him back.

According to Dr. Altenbernd, on the second call claimant told him that Geurian was perspiring heavily, felt chilly and cold, had a clamminess about him, was in quite a bit of chest pain and had shortness of breath, which were symptoms that alarmed Dr. Altenbernd to be concerned about a myocardial infarction. After approximately twenty to twenty-five minutes Dr. Altenbernd arrived at the Geurian home. Geurian was then lying in the living room, was nauseated, had chest pains, was short of breath, was ashen color, had great beads of sweat on his face and was breathing heavily and irregularly. After making a preliminary examination, Dr. Altenbernd administered morphine and anabasine for nausea. He found Geurian's blood pressure below 90, systolic, and could not get a diastolic pressure which indicated to him that the myocardium was not functioning at all well and he concluded Geurian was in profound shock. Geurian's regular doctor, Dr. Ballard, was then called immediately, and he instructed that Geurian be taken by ambulance to the St. Luke's Hospital where he would meet him. This was done. At the hospital, an EKG was made upon his arrival, and Geurian was then placed in a room. He was under oxygen for two days and thereafter showed improvement. After the third day Geurian was permitted visitors, and claimant was advised, apparently around November 4, that it was anticipated Geurian would be discharged from the hospital on November 7. At approximately 10:00 p. m. on November 5, 1958, Geurian had a sudden relapse and died.

The diagnosis as shown by the hospital records was "Acute anteroseptual myocardial infarction due to coronary thrombosis. Coronary arteriosclerosis. Hypercholia Perolemia."

There was no testimony by Drs. Hibbard and Ballard who attended Geurian in his last illness. Dr. Altenbernd testified in person, and Dr. Hughes W. Day, an expert in cardiology and heart disease, who never examined or treated Geurian, testified by deposition.

The examiner's findings and award of a death benefit in favor of the claimant in the amount of $13,500 payable at the rate of $38 per week, etc., were approved by the director and adopted by the district court on appeal. In addition thereto the district court specifically found:

"(1) that the deceased William Gus Geurian on October 15, 1958, sustained a personal injury by accident arising out of and in the course of his employment, and (2) that the death of William Gus Geurian on November 5, 1958, resulted therefrom."

Appeal has been duly perfected to this court by the Kansas City Power & Light Company presenting the matters hereafter discussed.

The appellant contends the claimants (appellees) failed to prove by any substantial, competent evidence that Geurian, the deceased workman, sustained "personal injury by accident arising out of and in the course of employment" as required by G. S. 1949, 44-501.

The workmen's compensation examiner found:

". . . The deceased did nothing during this period [referring to the period while Geurian was at the job on the early morning of October 15, 1958, his last day of work] except lay on the seat of the truck. His fellow workman performed all the activity that was performed. . . ."

The appellant calls our attention to the fact that this finding was approved by the director and adopted by the trial court, and there is no evidence in the record to disclose that Geurian performed any "job task" for the appellant on his last day of work, October 15, 1958.

The appellant argues the most reasonable inference from the evidence is that Geurian was too sick when he came to work for his shift on October 15, 1958, to perform any work.

There was also a finding by the examiner, which was approved by the director and adopted by the trial court, that Geurian's "riding in the truck and getting down from the cab of the truck to the ground on two occasions during the two hour period between 1:00 and 3:00 a. m., October 15, 1958" constituted exertion which precipitated the heart attack that caused the death of Geurian.

The appellant contends the evidence is clear that Geurian's physical exertion at the job was so minimal as to be de-minimus. Upon the evidence presented by the record the appellant argues that as a matter of law Geurian did not sustain "personal injury by accident arising out of and in the course of employment" and that his death did not and could not have resulted therefrom.

On appellate review of workmen's compensation cases, particularly with respect to heart cases, the law has been rather fully stated in *Wilson v. Santa Fe Trail Transportation Co.*, 185 Kan. 725, 347 P. 2d 235, commencing at the bottom of page 733 and concluding at the top of page 735 of the official report. The rules of law there stated are incorporated herein by reference.

The rules are also summarized in *Rorabaugh v. General Mills*, 187 Kan. 363, 356 P. 2d 796, commencing at the middle of page 366 and terminating near the end of page 367 of the official report.

In the *Rorabaugh* case it was said:

"The rule that this court will review all of the evidence in the light most favorable to the prevailing party below, and affirm the trial court's judgment, if there is any evidence which supports it, applies with equal force whether compensation has been allowed or denied by the trial court. . . ." (p. 367.)

The workmen's compensation examiner began his findings as follows: "The arbiter of the facts is again presented with the question of the degree of exertion needed to precipitate a heart attack. . . ."

Two closely analogous workmen's compensation cases involving the death of a workman caused by a heart attack have been before this court. In each case an award of compensation was made to the dependents of the deceased, and the question presented on appeal was whether the record disclosed sufficient evidence to sustain a finding that the decedent's death was a result of accidental injury arising out of and in the course of employment.

The first case, in course of time, was *Workman v. Johnson Bros. Construction Co.*, 164 Kan. 478, 190 P. 2d 863. There the decedent was a carpenter, and on the day of his death was employed in setting nails, a process by which he held a punch over a nail that had already been driven into the wood and struck the punch with an ordinary carpenter's hammer, driving the nail a little further into the wood. He was working in a basement on some shelves or bins which required him to stoop down to the floor at times and at other times to stand up and raise his hands as high as his shoulders. On the evening before his death, the deceased came home from work and while washing complained of a severe pain in his chest. His face was pale and his lips blue. In the course of the hearing this was sometimes referred to by the doctors as a coronary occlusion or coronary thrombosis. He went to work the next morning. The last time he was seen alive was about 3:00 o'clock in the afternoon. About 4:00 o'clock the same afternoon he was found lying down in one of the aisles in which he had been working.

In answer to hypothetical questions both the doctors testified that the deceased had a coronary occlusion on the evening before his death, the next day, and died from heart failure following coronary thrombosis. Both testified that he should have been put

to bed and kept quiet, and that when a man is in that condition a very slight activity would result in his collapse.

The court, after reciting familiar rules to which reference has heretofore been made and upon medical testimony favorable to the claimant, affirmed an award of compensation. After reviewing the evidence the court held that a reasonable conclusion to be drawn therefrom was that the deceased had been working at the time, or about the time, of the fatal attack, and concluded there was substantial, competent evidence on which to base an award of compensation to the claimant.

The other case is *Bohanan v. Schlozman Ford, Inc.*, 188 Kan. 795, 366 P. 2d 28. The evidence disclosed that the decedent reported for work at 7:30 a. m. and performed his labors as a mechanic for the respondent between the hours of 8:00 a. m. and 12:00 o'clock noon, and then collapsed while eating lunch on the respondent's premises at approximately 12:05 p. m. During the morning the decedent was working on a Ford automobile putting rings and bearings in the car.

When he reported to work in the morning he complained of not feeling too well, and later told the respondent's service manager that he did not feel very well but did not want to go to a doctor. During the morning the deceased was sick at his stomach, and on one occasion went to the back door. At noon, the regular lunch hour, he and a fellow employee sat down for lunch on the premises, as was their usual custom. The decedent suddenly lost his facial color and started to get up from his seat, but fell over on the floor and collapsed. He died enroute to the hospital.

A medical doctor testified the decedent had definite evidence of coronary disease, definite evidence of myocardium damage of an acute type and that he was, in fact, suffering from incipient myocardial infarction with histological evidence of myocardial damage, and that whether he was aware of it or not, any activity that he would have engaged in, including certainly his work, would have aggravated the situation, and did so. He further testified that in his opinion the decedent's performance of the labor on the morning in question was the actual cause or contributed to the cause of his death. Upon other medical evidence favorable to the claimants an award in favor of the claimants was affirmed.

In the *Bohanan* opinion the court said:

"Did the record show or tend to show decedent's death was a result of accidental injury arising out of and in the course of employment? It is a well-

established rule in this state that accidental injuries are compensable where the accident only serves to aggravate or accelerate an existing disease, intensifies the affliction, or contributes to the death of the workman. . . .

"The term 'personal injury' as used in our workmen's compensation act (G. S. 1949, 44-501) is generally construed as meaning any lesion or change in the physical structure of the body, causing damage or harm thereto, so that it gives way under the stress of a workman's usual labor; and, it is not essential that the disorder be of such character as to present external or visible signs of its existence. . . .

"The term 'accident' as used in the same statute was long ago construed and applied by Mr. Justice Burch, speaking for this court, in *Gilliland v. Cement Co.*, 104 Kan. 771, 180 Pac. 793, and consistently followed since that time, as meaning an occurrence or event which is undesigned, sudden and unexpected, usually of an afflictive or unfortunate character and often, but not necessarily, accompanied by a manifestation of force. . . .

"Only recently in the Thuillez case [*Thuillez v. Yellow Transit Freight Lines*, 187 Kan. 618, 358 P. 2d 676] we again reiterated, without deviation, the elementary, long-standing rule of this court that coronary occlusion, coronary thrombosis, cerebral hemorrhage or heart failure-acute, which resulted in death or disability to a workman, was personal injury by accident when it arose out of and was received in the course of employment.

"Did the accident arise out of the workman's employment? The phrase 'out of employment' *points to the cause of origin of the accident and requires some causal connection between the injury and the employment. In determining whether there was a causal connection between the work done and the injury suffered, we must, of necessity, consider the existing physical condition of the workman at the time of the injury. An injury arises out of employment if it arises out of the nature, conditions, obligations, and incidents of employment.* . . .

"If a workman's existing physical structure, whatever it may be, gives way under the stress of his usual labor, his death is an accident which arises out of his employment. In *Gilliland v. Cement Co.*, supra, it was stated, 'An accident arises out of the employment when the required exertion producing the accident is too great for the man undertaking the work, whatever the degree of exertion or the condition of health. . . .'" (pp. 797, 798.) (Emphasis added.)

The appellant, making reference to the above definition of "accident," says the only event or occurrence shown by the evidence during the time Geurian was at the job on October 15, 1958, was his illness as manifested by his vomiting and complexion at one stop, and his vomiting and lying down on the road for three to five minutes at another stop. This, the appellant contends, was not "unexpected" because he had vomited in the last three-week period immediately prior to October 15.

The appellant further argues that Dr. Altenbernd told him on the afternoon of October 14 that he was seriously ill, and warned

him that anything he did other than lying in bed would aggravate his condition; that Dr. Altenbernd recommended Guerian be hospitalized and when Geurian refused, he gave him medicine and told him to go home and go to bed and get in touch with his regular doctor the next morning; and that Geurian had sustained a previous heart attack and had considerable knowledge about such illness. By reason thereof the appellant argues, when Geurian went to work on October 15, that which occurred was not unexpected.

The foregoing argument tends to define the term "accident" in a strict and technical sense. The elements of the term "accident," as well as other provisions of the workmen's compensation act, must not be construed in a strict and technical sense but liberally in a manner designed to effectuate the true intent and purpose of the act. (*Kauffman v. Co-operative Refinery Assn.,* 170 Kan. 325, 225 P. 2d 129). Various types of heart failure which result in death or disability to a workman have been held to be *personal injury by accident* when they arose out of and were received in the course of employment.

We think Geurian's return to work on October 15, 1958, contrary to Dr. Altenbernd's advice, is immaterial to a consideration of the question presented on appellate review. On the facts presented by the record in this case, it is apparent Geurian worked with substernal pain on many occasions after having suffered his initial heart attack in 1954, apparently, insofar as he was concerned, without ill effects.

In *Barker v. Shell Petroleum Corp.,* 132 Kan. 776, 297 Pac. 418, it was stated: ". . . it would never do to say that a courageous workman who sticks to his task notwithstanding his pain and injury is to be penalized for so doing." (p. 784.)

The same would be true where the workman died from the injury and his dependents claim compensation.

Was there any causal connection between the personal injury of Geurian and his employment? The appellant contends there was no causal relation between Geurian's injury and his employment, and, if so, that there was no causal relation between his injury and his death on November 5, 1958.

The crux of the appellant's argument is that while Geurian was on the job riding in the appellant's truck for two hours on the morning of October 15, 1958, he was not engaged in any "job task" which caused or precipitated the injury. It is argued the cases heretofore decided by the court all involve instances where the

employee was engaged in considerable job exertion at the time of the accidental injury.

The language employed in the decided cases is usually confined to the facts of the particular case, and it has not been difficult for the appellant to find language in cases that seems to bear out such argument, but appellant's argument is not technically correct. In *Kauffman v. Co-operative Refinery Assn.*, supra, the injury, a strangulated hernia, sustained while the workman was changing his clothes in the employer's building provided for that purpose, *preparatory for work*, was held to constitute an accident within the contemplation of the workmen's compensation act, and the injury arose out of and in the course of employment. It cannot be successfully argued the workman was performing a "job task" for the employer in this situation and yet an award of compensation was affirmed.

Before proceeding further with the appellant's argument, it must be established that the accidental injury of Geurian arose in the course of his employment.

Without reviewing all of the evidence in detail it may be said, after a careful examination of the record, there was sufficient evidence to sustain the finding that Geurian suffered a myocardial infarction while riding in the truck and getting down from the cab of the truck to the ground on two occasions between 1:00 and 3:00 a. m. on October 15, 1958.

Dr. Altenbernd saw Geurian for the first time at his office on October 14, 1958, at approximately 6:00 p. m. with complaints of substernal pain, and he next saw Geurian after 3:00 a. m. on October 15, 1958. In response to a proper hypothetical question, which included the personal knowledge acquired by him in seeing and treating Geurian on both October 14 and 15, Dr. Altenbernd testified as follows:

"I believe this man had a very severe progressive case of arteriosclerosis involving the coronary. I felt after examining him on October 14, 1958, he did have a very severe case of angina which is a pre-existing condition for myocardium infarction. On this bases I did advise him to go home and go to bed and not to do any type of exertional type of activity, and even warned him against going to the bathroom and straining and I feel any type of sitting up or traveling would definitely jeopardize his cardiac condition and this can be pre-existing or aggravated cause of myocardial infarction. I feel after examining him on 10-15-58, that he had had a myocardial infarction and he did die from it."

Dr. Altenbernd testified that any exertional type of activity could

aggravate a myocardial infarction. He said nausea and perspiration are evidence of shock which follow a myocardial infarction.

Dr. Altenbernd, after considering the condition of Geurian on October 14 as a result of an examination, did not think Geurian had suffered a myocardial infarction, and, after seeing Geurian in the early morning hours of October 15, there was no doubt in his mind that Geurian had suffered a myocardial infarction. It was Dr. Altenbernd's opinion that the effort exerted by Geurian on the job caused it.

Dr. Day, a cardiac specialist, testified it was his opinion from examining EKG's that the death of Geurian resulted directly from ventricular fibrillation which is associated with myocardial infarction. From his examination of Geurian's EKG's taken October 15, 1958, it was his opinion that an infarction was occurring or had occurred at such date, such EKG's having been taken after the deceased entered St. Luke's Hospital the morning of October 15, 1958.

Having concluded that there was sufficient evidence presented in the record to sustain the finding that Geurian suffered personal injury by accident in the course of his employment, can it be said that the injury arose out of the employment?

As heretofore quoted in the *Bohanan* case an injury arises out of employment if it arises out of the nature, conditions, obligations and incidents of employment. On the facts in this case Geurian was riding in the appellant's truck, which was described as a rough-riding truck, for a period of two hours in the early morning hours of October 15. It may be said riding in a truck was the nature of his employment, was one of the conditions of his employment, was an obligation of his employment and was one of the incidents of his employment. The same may be said of mounting into the cab of the truck and dismounting from the truck. (See, *Kauffman v. Co-operative Refinery Assn.*, supra.)

The medical evidence was sufficient to establish that any exertion, such as sitting or lying on the seat of a rough-riding truck, or getting in and out of a truck, would be sufficient to aggravate or precipitate a myocardial infarction with an employee in Geurian's physical condition. There was also medical evidence to support the finding that Geurian's death resulted from the injury he sustained while riding in the truck on the morning of October 15, 1958.

The appellant relies on *Rorabaugh v. General Mills*, supra, and contends the medical evidence presented by the record in the in-

stant case was not as favorable on the point of causal connection as was the medical evidence in the *Rorabaugh* case. This point need not be pursued because the trial court there denied an award of compensation, and the evidence was reviewed to determine whether the judgment of the district court was supported by the evidence, considered most favorably to the prevailing party, and whether the judgment was contrary to the evidence. In the instant case the reverse is true because the district court found a causal connection between Geurian's work and his heart attack and the subsequent death.

The appellant asks whether the phrase "personal injury by accident arising out of and in the course of employment" encompasses merely illness or increased illness, while at the job during working hours. If an award is sustained the appellant contends the answer must be in the affirmative. This question assumes that heart cases are treated as an illness rather than personal injury by accident, and requires no further attention in view of the numerous heart cases which this court has decided contrary to such assumption.

The appellant also asks:

"Is an employer a life insurer in the amount of the Kansas Workmen's Compensation Death Benefits of each employee who has had and recovered from a heart attack and is able to return to work and thereafter does work and sustains another heart attack and dies as a result?"

The workmen's compensation act prescribes no standard of health necessary to bring the workman under the law, and accidental injuries are compensable thereunder where the accident only serves to aggravate a pre-existing condition. (*Workman v. Johnson Bros. Construction Co.*, supra; *Pinkston v. Rice Motor Co.*, 180 Kan. 295, 303 P. 2d 197; and *Kronig v. Nolan Motor Co.*, 186 Kan. 534, 351 P. 2d 1.)

The argument is simply directed against the many decisions of this court holding that cases involving a heart attack fall in the category of personal injury by accident if the injury arises out of and in the course of the workman's employment.

The trial court awarded death benefits to the claimants in amounts as prescribed in G. S. 1961 Supp., 44-510. At the time of Geurian's death in November, 1958, Chapter 293 of the Laws of 1957 (G. S. 1957 Supp., 44-510) was in effect, wherein the total death benefit was limited to $12,500 and the burial award to $450, rather than $13,500 and $600, respectively, awarded. In *Johnson v. Warren,* 192 Kan. 310, 387 P. 2d 213, it was held where parties are under

the workmen's compensation act their substantive rights are determined by the law in effect on the date of the employee's injuries.

In view of this error the award is modified accordingly to reduce the death benefit to $12,500 and the burial award to $450.

After careful examination and review, we hold the record contains substantial, competent evidence to support the findings of the district court that Geurian suffered personal injury by accident arising out of and in the course of employment and that his death resulted therefrom.

The judgment of the lower court is affirmed as modified.

PRICE, J., dissents from paragraph two of the syllabus and the corresponding portion of the opinion.

FONTRON, J., not participating.