No. 44,677

IVA MEIN, Widow and As Guardian of Eddie Paul Mein, a Minor (Herbert Mein, Deceased), *Appellee*, v. MEADE COUNTY, KANSAS and EMPLOYERS MUTUAL CASUALTY COMPANY, *Appellants*.

(421 P. 2d 177)

Opinion filed December 10, 1966.

*H. Lee Turner*, of Great Bend, argued the cause, and *J. Eugene Balloun* and *James Berglund*, both of Great Bend, were with him on the brief for the appellants.

*Chester A. Nordling*, of Liberal, argued the cause, and *Chas. Vance, H. Hobble, Jr., Rex A. Neubauer, Gene H. Sharp* and *Kerry E. McQueen*, all of Liberal, were with him on the brief for the appellee.

The opinion of the court was delivered by

FONTRON, J.: This is a workmen's compensation case initiated by a deceased workman's dependents, who will be designated as claimants in this opinion. The workmen's compensation examiner found that the decedent had sustained personal injury by accident arising out of and in the course of his employment which resulted in his death, and entered an award accordingly. This award was subsequently approved by the director. On appeal, the district court adopted the findings made by the examiner and awarded compensation in favor of the claimants. The employer and its insurance carrier bring this appeal. They will hereafter be referred to as respondents.

The issue on appeal is defined by the respondents as follows:

"Is there substantial evidence to support the Court's finding that there was a causal connection between the decedent's work and his heart attack?"

Before examining the evidence to determine its sufficiency, we pause to reiterate what we have many times declared: namely, that whether a workman's disability, or death, is due to accidental causes arising out of and in the course of his employment is one of fact which, when determined by the district court, will not be dis-

turbed on appeal if supported by substantial competent evidence. (*Allen v. Goodyear Tire & Rubber Co.,* 184 Kan. 184, 334 P. 2d 370; *Phillips v. Skelly Oil Co.,* 189 Kan. 491, 370 P. 2d 65, and authorities cited therein.)

Turning to the record, we find that the decedent, Herbert Mein, was an employee of Meade County. He was engaged in highway maintenance work and had formerly been a supervisor or road foreman for the county. He had a history of heart trouble going back as far as February 1957 and, in January 1961, he had suffered a heart attack which kept him away from his job for some three months. On his return to work, and at his own request, he was relieved of supervisory duties and given the lightest work which his type of employment afforded.

During the two weeks prior to his death, the decedent was engaged in mowing, in trimming trees and, for the most part, in bulldozing trees with a TD-9 International caterpillar tractor. During this period, when Mein arrived home after work, he was so tired he could hardly remove his boots and his wife noticed that his hands were swelling and looked black.

On the day of October 31, 1962, the decedent was engaged in pushing over trees with the tractor. He appeared to be feeling well that day, both while at work and after he got home. About 1:00 A. M., the next morning, the decedent complained of stomach cramps and got up and went into the bathroom, where he passed out on the stool. His wife then called Dr. William W. Orrison, who had previously attended her husband. Dr. Orrison came over immediately, checked the decedent's heart and blood pressure, diagnosed his condition as gastroenteritis, or stomach flu, and then gave him a shot and left. About ten minutes later, the decedent had a severe attack, was taken to the hospital by his wife, and died shortly after as the result of a coronary occlusion.

There was testimony, although disputed, by a graduate engineer from Texas A. & M. College, who formerly had worked for lumber companies in Oregon and was experienced in clearing timbered areas, that bulldozing, grubbing out or pushing trees over with a tractor of the type operated by decedent, would be quite a chore and that a continuous operation would wear a person out; that such an operation would be frustrating and that it would be a lot of work when trees broke off and their roots had to be loosened and the stumps grubbed or pulled out.

Turning to the medical testimony, the record shows that Dr. Orrison, to whom we have previously referred, testified that he saw the decedent a week or so prior to his death; that he thought Mr. Mein was working too hard at that time and cautioned him about overwork. In response to a hypothetical question asked on direct examination, Dr. Orrison further stated:

"I think that the type of work indicated would definitely be a factor in his death."

On cross-examination, the doctor stated that running a bulldozer was a precipitating factor in the death and then was asked the following question and gave the following answer:

"Q. All right. Now, for you to say that work being done two weeks before plays some part in the formation of a blood clot—

"A. I didn't say two weeks before. I said that day."

Viewing the evidence we have just related in the light most favorable to the claimants, as we are bound to do under familiar rules of appellate practice and procedure (*Heer v. Hankamer Excavating Co.*, 184 Kan. 186, 187, 334 P. 2d 372), we are compelled to conclude that it is sufficient to require affirmance of the trial court's findings and judgment.

In so determining, we do not intend to imply that the evidence was not in conflict. Neither do we suggest that the evidence would not have supported the district court in making contrary findings or in rendering judgment in favor of the respondents. There was testimony that the work performed by the decedent was not strenuous. Moreover, Dr. Frank C. Brosius, a Wichita doctor specializing in cardiology, testifying on behalf of the respondents, stated that in his opinion the decedent's death was not related in any way to his work. However, it is not our function, on appeal, to weigh conflicting evidence; that responsibility falls within the province of the trial court (*Fine v. Telephone & Power Supply Co.*, 185 Kan. 383, 345 P. 2d 616; *Gerber v. Buehler*, 194 Kan. 10, 397 P. 2d 352), whose judgment, as we have said, must be upheld if supported by substantial competent evidence.

In determining that the evidence, contradictory though it may be, is sufficient to support the trial court's conclusions and judgment, we have not ignored certain facts: *i. e.*, that the decedent's death did not occur until several hours after his work had ceased and that his work, on the day in question, was not of an unusual or extraordinary nature. Nonetheless, we believe a causal connection was suffi-

ciently established between decedent's employment and his death by the testimony of Dr. Orrison, coupled with the engineer's testimony concerning the nature of Mein's work.

In a long line of decisions, this court has held that an injury to, or death of, a workman is compensable under the Workmen's Compensation Act where the physical structure of a workman, whatever it may be, gives way under the strain or stress of his usual and customary labor. (*Gilliland v. Cement Co.*, 104 Kan. 771, 180 Pac. 793; *Harmon v. Larabee Flour Mills Co.*, 134 Kan. 143, 4 P. 2d 406; *Hill v. Etchen Motor Co.*, 143 Kan. 655, 56 P. 2d 103; *Carney v. Hellar*, 155 Kan. 674, 127 P. 2d 496; *Peterson v. Safeway Stores*, 158 Kan. 271, 146 P. 2d 657.)

This rule, which we have applied for so many years, and with such consistency, accords with the view generally prevailing in this country. In 1 Larson's Workmen's Compensation Law, § 38.30, pp. 526, 527, the author says:

". . . A majority [of courts] . . . accept usual exertion as leading to accidental injury when it involves coronary thrombosis, myocarditis, dilatation of heart, arteriosclerosis, arthritis, encephalitis, bursitis, back or muscle strain, appendicitis, and the like. . . ."

In *H. J. Jeffries Truck Line v. Grisham* [Okl. 1964], 397 P. 2d 637, the court in discussing this question, said:

"Disability or death attributable to coronary occlusion, thrombosis or myocardial infarction is compensable if antecedent strain arising out of and in the course of employment is either the sole or a contributing cause of the pathology. . . . Even though claimant may have suffered from pre-existing disease or infirmity, which constitutes a predisposing cause, an internal injury of a sudden, unusual and unexpected nature may nevertheless be accidental in character, although its external cause is attributable to ordinary work performed in a normal manner and without any untoward incident connected therewith. . . . An accidental injury within the meaning of the Workmen's Compensation Act need not be attributable to one particular event, but may arise progressively from the cumulative effect of a series of exertion episodes. . . ." (p. 640.)

. . . . . . . . . . . . .

". . . If, because of some pre-existing underlying weakness, an employee reaches a breaking point under the stress of ordinary work, for that individual the break is nonetheless the result of overexertion. It is so because the individual's organism did give way under its force. The break is deemed the accident—the fortutious [sic] and unexpected event. This point may be reached through the cumulative effect of each day's strain. Separately one day's strain may be slight, but when added to the strains which have preceded, it becomes a destructive force. . . ." (p. 641.)

A lucid discussion of the rule is found in *Dwyer v. Ford Motor Co., 36* N. J. 487, 178 A. 2d 161, where the court stated:

". . . A *single* instance of work effort is not an essential element in proving causality; a succession of such efforts over the entire work day is sufficient when followed by the heart attack in such time and under such circumstances thereafter as to demonstrate to the degree of probability required that the totality of work effort contributed to the attack. The right to compensation exists whether a single employment strain or a succession of such strains proved in whole or in material part to be greater exertion than the ailing heart could withstand. . . ." (pp. 495, 496.)

Neither is the fact that injury may first become apparent, or death occur, after a workman has left his employment, a factor of decisive significance in determining whether compensation is due under the Act, provided the injury, or death, is causally related to the work performed on the job. Larson states it in this way:

"If a strain occurs during employment hours which produces no symptoms, and claimant suffers a heart attack as a result some time after working hours, the injury is compensable. . . ." (Vol. 1, § 29.22, p. 452.108.)

On more than one occasion where death occurred after a workman had left his employment for the day, this court has held the death compensable. (*Harmon v. Larabee Flour Mills Co.*, supra; *Workman v. Johnson Bros. Construction Co.*, 164 Kan. 478, 190 P. 2d 863; *Geurian v. Kansas City Power & Light Co.*, 192 Kan. 589, 389 P. 2d 782.)

A case which bears considerable analogy to the one at bar is *Campbell v. City of North Platte*, 178 Neb. 244, 132 N. W. 2d 876. There, a city fireman had died of coronary artery disease and his widow brought action under a statute providing for a pension in case death was caused by or resulted from injuries received in line of duty. The decedent had a history of coronary arteriosclerosis and had been hospitalized with symptoms of coronary occlusion. On his return from the hospital he was assigned tasks limited to the fire station. Approximately five months later he died at home, five and one-half hours after leaving his work at the station. Responding to a hypothetical question, an internist found a causal connection between the deceased's duty and his death. In permitting recovery, the Nebraska court observed:

"The answers of the expert witness will ordinarily sustain a verdict unless probative value is destroyed by impeachment. . . ." (p. 248.)

In *Joy v. Florence Pipe Foundry Co.*, 64 N. J. Super. 13, 165 A. 2d 191, the New Jersey court said:

"Thus, if a strain occurs during the hours of actual employment, but no resulting symptoms are produced until after working hours, the disability, whether in the form of a heart attack, . . . a perforation of an ulcer, . . . or a cerebral hemorrhage, may nonetheless be compensable. . . ." (p. 23.)

The mere lapse of time between work effort and heart attack does not compel a conclusion that connection between the two is lacking. (*Dwyer v. Ford Motor Co.*, supra.) Where, as here, there has been evidence concerning the facts, circumstances and nature of the work effort and credible medical opinion relating that effort to a coronary occlusion manifested a few hours after the effort had ceased, it is our opinion that sufficient causal connection has been established between the employment and the death to require approval of a finding to that effect made by the trier of the facts.

The judgment of the court below is affirmed.

PRICE, C. J., dissents.