No. 44,978

Ann M. Hanna, Individually and as Guardian of Cheryl Ann Hanna and Jackie Pershing Hanna, Surviving Widow and Dependent Children of Jack Pershing Hanna, Deceased, *Appellee*, v. Post & Brown Well Service (Respondent), and Travelers Insurance Company (Insurance Carrier), *Appellants*.

(433 P. 2d 356)

Opinion

filed November 13, 1967.

*Jerry M. Ward*, of Great Bend, argued the cause and was on the brief for the appellants.

*H. Lee Turner*, of Great Bend, argued the cause, and *J. Eugene Balloun, Max E. Eberhart* and *Jack G. Duncan*, all of Great Bend, were with him on the brief for the appellee.

The opinion of the court was delivered by

Schroeder, J.: This is a workmen's compensation case initiated by the deceased workman's widow (claimant-appellee), individually and as guardian of their two minor children, to recover compensation from the respondent and its insurance carrier (appellants) for the death of the workman allegedly due to aggravation of a pre-existing heart condition while employed by the respondent. The workmen's compensation special examiner denied compensation, but the workmen's compensation director reversed the examiner and awarded compensation, and the award was affirmed on appeal to the district court. Appeal has been duly perfected.

The issue on appeal is whether there is substantial evidence to support the trial court's findings that there was a causal connection between the decedent's work and his death, and that the decedent suffered an accident which arose out of and in the course of his employment which caused him injury resulting in his death.

Jack Pershing Hanna died October 6, 1963, in Larned, Kansas, at the age of 45 years. He was survived by his widow, Ann M.

Hanna, and two minor children. Dr. T. D. Ewing, acting coroner for Pawnee County, Kansas, executed the death certificate, stating the immediate cause of death was myocardial infarction due to coronary occlusion due to arteriosclerotic heart disease of several years' duration.

Jack Pershing Hanna, the deceased workman, was employed by Post & Brown Well Service, the respondent in this case, on September 29, 1963, to and including October 5, 1963, when his employment was terminated at the end of the work day.

The decedent had a long history of heart trouble. In 1958 he had a closed heart operation in Tulsa, Oklahoma, after which he felt well for about a year. However, he again began having trouble, and went to see Dr. Francis Burdick in Denver, Colorado. As a result of this and further examinations, Mr. Hanna underwent open heart surgery in 1961. The claimant testified that after the operation he felt pretty well, and Doctor Maresh, who also examined him after the operation, reported that Mr. Hanna felt some improvement. However, he was still far from carrying on normal activity, and Doctor Maresh, in connection with the Colorado Heart Association, placed Mr. Hanna in the III-C work classification of the American Heart Association, which means that Mr. Hanna was physically qualified only for sedentary work.

In January, 1963, the Hannas moved to Hutchinson, Kansas, where he managed a hotel. He lost this job in July, 1963, because the owner did not want a manager with children. Between July and September, 1963, Mr. Hanna was largely unemployed, and the family was forced to borrow money from Mrs. Hanna's mother. On September 27, 1963, Mr. Hanna answered a newspaper advertisement for a job with Post & Brown Well Service and was employed. He had done some oil field work before he was married, but none thereafter. He began work on September 30, 1963.

During the week of September 30, 1963, to October 5, 1963, Mr. Hanna lived in a hotel in Larned, Kansas, where he worked, while his wife lived at their home in Hutchinson. Each night she called him and he told her how tired he was. When she talked with him on the evening of Thursday, October 3, 1963, he said he felt as if he had a heart attack coming on, but that he was not going to quit work because he felt they needed the money.

Hanna was employed by the respondent to be a member of a drill pipe pulling crew. The work of the crew is heavy manual labor. Hanna was assigned the easiest of this work.

On October 4, 1963, Hanna advised his foreman, Bill Post, that his chest was being filled with fluid; that he had an appointment with a doctor in Larned; but when the foreman told him to keep the appointment he refused to do so and went to work. While at work Hanna tired easily and rested often while the other men worked.

Hanna returned from work about 8:00 p. m. on October 5, 1963, after being with the crew at least twelve hours. He complained to the night clerk at the hotel, where he lived, that he was not feeling well. He talked about his heart condition with a hotel guest (Royal Griffith) and said he had a horror of dying over the week-end. He appeared to be heavy-set, with a good physical build; he was jolly, friendly and talkative to this guest. To the night clerk he also appeared to be red-faced and breathing hard, with his head hanging down, and she thought he should go to bed and rest. He received two telephone calls from his wife that evening. The night clerk heard him snoring extremely loudly about 2:00 a. m., and while he snored every night it was extraordinarily loud because she and another party commented on it at the time. The night clerk further stated that when Hanna first came in to the hotel in the early part of the week, his breathing was not so bad; but it seemed to get worse as the week went on, working as hard as he was.

During the telephone conversation on Saturday, October 5, 1963, Hanna told his wife he had worked thirteen hours that day pulling rods; that he had an attack during work; and that he had to sit down for a couple of minutes.

Mr. Hanna's fellow employees, Orville Kasselman and Wilbur Traylor, as well as his foreman, Bill Post, all confirmed the fact that on Saturday, October 5, 1963, Mr. Hanna had seemed to play out on the job and had to sit down and rest; that he did not eat lunch that noon and sat on the side of the truck most of the afternoon. Orville Kasselman and Walter Dubbs testified that the type of work performed by Hanna was hard manual labor—particularly for one who was inexperienced in the field.

Mrs. Hanna and a nurse and a receptionist in the employment of Doctor Shepard confirmed that during the week preceding his death, Hanna had made an appointment with Doctor Shepard because he was having trouble.

The night clerk at the hotel testified that Hanna grew more weary as the week of his employment went on, and on Saturday, October

5, 1963, he seemed very tired and short of breath. The next morning he was found dead in his bed.

Although there was a conflict as to the cause of death, Doctors Burdick, Maresh and Swan each positively stated it was his reasoned opinion that the manual labor engaged in by Hanna during the week preceding his death was directly and causally related to his death. Doctors Burdick and Maresh had examined the decedent when he lived in Colorado, and their opinion was that Hanna died of acute cardiac failure, rather than the myocardial infarction listed as the cause of death by the coroner. This would explain the filling of the decedent's chest with fluid prior to his death. No postmortem was done.

Doctor Paine, while conceding that Hanna's work could have aggravated or contributed to the heart failure which he experienced, felt that because of the weakened condition of the decedent's heart, he could not definitely say what was the cause of Hanna's death. Doctor Ewing, who examined Hanna's body after his death, stated by deposition he did not feel Hanna was suited for manual labor, but refused to speculate in his testimony on the cause of death because of his lack of knowledge about Hanna's physical condition prior to death. He did, however, admit that it was possible, and even "probably" more probable than not, that the work Hanna was doing contributed to his death.

Doctors Sifford and Lukens stated in their opinion the work performed by the decedent was not a causal factor in the decedent's death. Doctor Lukens, although never having personally examined the decedent, felt that from the symptoms related by the doctors who had examined him, the most likely cause of death would have been "an embolic phenomenon of some sort, that is, a blood clot breaking off in the heart and traveling somewhere else in the body, most likely the brain. The next most likely phenomenon would either be an episode of cardiac arrhythmia from which ventricular fibrillation occurred and the circulation stopped or cardiac standstill occurred."

It is the appellants' contention that this case presents an unusual set of facts and circumstances due to the nature of the workman's pre-existing heart disease. The evidence is undisputed that the workman in this case, before going to work for Post & Brown Well Service, was suffering from a heart condition for which the prognosis was extremely poor regardless of any of his activities.

The appellants emphasize, in addition to the medical history heretofore stated, that at the age of 7 or 8 years Mr. Hanna had rheumatic fever and St. Vitus Dance. In 1961 it was found his heart had increased 40% and tests revealed a slow auricular fibrillation with left ventricular hypertrophy and strain; the diagnosis was rheumatic heart disease with mitral insufficiency. In August, 1961, an open heart operation was performed with no appreciable change in his general condition and he was repeatedly in and out of cardiac failure. The appellants further rely on testimony that mitral stenosis is an inflammatory disorder of the mitral valve of the heart which is secondary to a previous acute rheumatic infection. The inflammatory process involving the valve produces scarring and adhesions of the valve leaflets. The scarring and adhesions narrow the opening of the valve so there is an obstruction to the blood flow from the left atrium into the left ventricle of the heart. This obstruction of the flow of blood causes enlargement of both chambers on the right side of the heart and at the same time produces congestion of the lungs. As the disease progresses, congestive heart failure occurs with fluid developing in the lungs and swelling of the liver and lower extremities.

The appellants contend the claimant has the burden of establishing by substantial competent evidence an "accident" within the meaning of the workmen's compensation act; that the claimant must establish the workman suffered heart failure while working; and that the heart failure was occasioned by or due to the work which the decedent was doing, citing *Hanna v. Edward Gray Corporation*, 197 Kan. 793, 421 P. 2d 205, where it is said:

". . . The injury must arise because of the employment, or in some reasonable way be traceable to it. The injury must in some sense be due to the employment [citing cases]. . . ." (p. 796.)

It is the appellants' position that upon all the evidence in this case the claimant has failed to meet this burden.

The appellants have misconstrued *Hanna v. Edward Gray Corporation*, supra. There a workman did suffer a coronary occlusion while working on the job for his employer. The right to compensation was challenged on the theory that the claimant had not sustained the burden of showing that work caused the coronary occlusion, there being no medical testimony to establish the probability of such causal connection. The court there specifically stated in the opinion that the case was corollary to, and should be considered in connection with, *Mein v. Meade County*, 197 Kan.

810, 421 P. 2d 177, where general rules to which this court adheres in heart cases are discussed and elaborated, and to which specific reference was made.

In the *Mein* case the heart attack occurred at night while the workman was at home and after he had gone to bed. Upon sufficient medical testimony and other evidence, it was there held the trial court's finding of causal relationship between the employment of the deceased workman and the heart attack, from which he subsequently died, was supported by sufficient evidence.

The court said in *Mein*:

"Neither is the fact that injury may first become apparent, or death occur, after a workman has left his employment, a factor of decisive significance in determining whether compensation is due under the Act, provided the injury, or death, is causally related to the work performed on the job. Larson [on workmen's compensation law] states it in this way:

" 'If a strain occurs during employment hours which produces no symptoms, and claimant suffers a heart attack as a result some time after working hours, the injury is compensable. . . .' (Vol. 1, §29.22, p. 452.108.)

On more than one occasion where death occurred after a workman had left his employment for the day, this court has held the death compensable. (*Harmon v. Larabee Flour Mills Co.*, supra [134 Kan. 143, 4 P. 2d 406]; *Workman v. Johnson Bros. Construction Co.*, 164 Kan. 478, 190 P. 2d 863; *Geurian v. Kansas City Power & Light Co.*, 192 Kan. 589, 389 P. 2d 782.)" (p. 814.)

The district court made extended written findings of fact based upon the evidence, the substance of which is incorporated in the foregoing statement of facts, following which it made written comments as follows:

"There were 18 witnesses in this case of which 6 were medical doctors. This court read all of the depositions and transcripts of proceedings carefully. One group of medical experts indicated that there could be a causal connection between Hanna's death and Hanna's work for the Respondent. The other group of medical experts appear to say there can be no causal connection between a man's work and his death from heart disease. Even though this medical testimony is conflicting, vague, uncertain and extremely difficult to understand by one who is not well versed in the technical language of the expert, it is still necessary for this court to make a decision. This decision can only be made when considering the facts of the case as a whole, using, of course, the opinions of our Supreme Court as a guide. There are no specific facts which compel a decision one way or the other. A decision must be based rather on the totality of the circumstances. Certainty is not possible and should be avoided, not sought.

"For the foregoing reasons, based on the Findings of Fact by this Court, this Court finds that there was a causal connection between Hanna's work and Hanna's death; that he suffered an accident which arose out of and in the course

of his employment which caused him injury resulting in his death on October 6, 1963. Hanna should not have attempted to work for this Respondent for he knew the work to be heavy manual labor and of the kind that he had been warned not to tackle, but he did work for the Respondent. He experienced work difficulties from the beginning. He wore out and became weakened because of it. This was evident to all who worked with him, including the Respondent's foreman who terminated Hanna's employment. The foreman indicates his reason for firing Hanna to be because he was inexperienced and could not do the work required of him; but it is easy for this court to conclude that Hanna's failure to work steadily, his resting while the others worked, had as much to do with Hanna's discharge as did his inexperience."

The appellants point to the fact that the claimant has offered no actual evidence in this case as to the cause of death, since an autopsy of the decedent was not performed. They argue this is a part of the claimant's burden of proof. Upon this premise the appellants argue it would have to be assumed that the rheumatic disease played a part in Mr. Hanna's death, and therefore, there is an element of conjecture and surmise as part of the claimant's proof. The appellants conclude that the evidence establishes the death of Hanna to be the natural result of the heart disease and not an accident arising out of his employment, and they rely on workmen's compensation cases from other states to support their theory of the law.

This court has frequently said in workmen's compensation cases it does not place much reliance upon cases from foreign jurisdictions based upon workmen's compensation statutes that vary in their provisions.

One of the most litigated issues in workmen's compensation cases has been whether a heart attack or heart failure sustained by a workman *arose out of his employment.* The fundamental rules to be applied on appellate review in such cases have been stated many times and are summarized in *Rorabaugh v. General Mills,* 187 Kan. 363, 356 P. 2d 796, at pages 366 and 367 of the official report, to which reference is made.

It is not disputed under the decisions of this court that if a workman's physical structure gives way under the stress of his usual labor, the injury may be classified as an "accident" within the meaning of the workmen's compensation act, and compensation awarded. This rule is also applicable to "heart" cases. It has been held that a coronary thrombosis *(Peterson v. Safeway Stores,* 158 Kan. 271, 146 P. 2d 657; and *Hill v. Etchen Motor Co.,* 143 Kan. 655, 56 P. 2d 103), or an acute coronary occlusion *(Pinkston v. Rice Motor Co.,*

180 Kan. 295, 303 P. 2d 197; and *Alpers v. George-Nielsen Motor Co.*, 182 Kan. 790, 324 P. 2d 177), which resulted in the death or disability to a workman, was personal injury *by accident* when it arose out of and was received in the course of employment. *(Alpers v. George-Nielsen Motor Co.*, supra; and *Wilson v. Santa Fe Trail Transportation Co.*, 185 Kan. 725, 347 P. 2d 235.)

Under the workmen's compensation act the rule is that the injury arises *out of the employment* when there is apparent to the rational mind, upon consideration of all the circumstances, *a causal connection between the conditions under which the work is required to be performed and the resulting injury.* (*Pinkston v. Rice Motor Co.*, supra; *Alpers v. George-Nielsen Motor Co.*, supra; *Wilson v. Santa Fe Trail Transportation Co.*, supra; and *Rorabaugh v. General Mills*, supra.)

As applied to heart cases the terms "personal injury," "accident," "in the course of" employment, and "arising out of" employment, used in the workmen's compensation act were defined in *Pinkston v. Rice Motor Co.*, supra, commencing at the top of page 300 and concluding at the top of page 302 of the official report. These definitions are incorporated herein by reference.

It is a well established rule in this state that accidental injuries are compensable where the accident serves only to aggravate or accelerate an existing disease, intensifies the affliction, or contributes to the death of the workman. *(Pinkston v. Rice Motor Co.*, supra; *Bohanan v. Schlozman Ford, Inc.*, 188 Kan. 795, 366 P. 2d 28; *Pence v. Centex Construction Co.*, 189 Kan. 718, 371 P. 2d 100; and *Geurian v. Kansas City Power & Light Co.*, 192 Kan. 589, 389 P. 2d 782.)

If a workman's existing physical condition, whatever it may be, gives way under the stress of his usual labor, his death is an accident which arises out of his employment. In *Gilliland v. Cement Co.*, 104 Kan. 771, 180 Pac. 793, it was stated, "'An accident arises out of the employment when the required exertion producing the accident is too great for the man undertaking the work, whatever the degree of exertion or the condition of health.'" (p. 776.)

Plausible as the respondent's argument may seem, the dilemma in cases of this type is the divergent medical views concerning heart cases. A discussion on this point was undertaken in *Hanna v. Edward Gray Corporation*, supra, where the court had a heart case under consideration, and it was held that the record contained substantial competent evidence to sustain the finding of the trial court because it was entitled to consider lay testimony, together with

the testimony of an expert medical witness, to determine whether the injury arose out of the claimant's employment. In the opinion the court said:

"Medical science has not developed to the extent that it can diagnose human ailments with the exactitude of the mathematician, and a requirement that the physician testifying should be required to state with certainty the cause of a claimant's condition, after a hypothetical case has been submitted to him, would be supposing an exactness in medical science to which its most learned followers have not yet attained. (*Son v. Eagle-Pitcher M. & S. Co.,* 144 Kan. 146, 58 P. 2d 44.) Necessarily, there is an element of uncertainty and speculation in the formulation of expert opinion on the mysterious functioning of the human body, and physicians are hesitant to express a positive opinion, but absolute certainty is not required to support an award in workmen's compensation cases.

"Perhaps it has been a reluctance of the courts to thrust upon victims of industrial accidents the uncertainties of medical science that has led to the rule which permits consideration of lay testimony, together with the testimony of expert medical witnesses, to resolve issues in workmen's compensation cases relating to the injury of workmen and the causal relation of such injury to the employment. (See, *Barr v. Builders, Inc.,* 179 Kan. 617, 296 P. 2d 1106.)" (p. 802.)

While the district court, in its comments, stated its confusion with the conflict in the technical aspects of the medical testimony, it also stated the medical opinions could support a decision either way, and made its decision on the facts of the case as a whole, using all the facts and the evidence surrounding the death that were brought out at the hearing. On this point the decision of the trial court in the instant case recognized the rules stated in *Hanna.*

In *Thuillez v. Yellow Transit Freight Lines,* 187 Kan. 618, 358 P. 2d 676, this court said:

"In a workmen's compensation case it is not required that the claimant establish his right to an award by direct evidence alone, . . . Circumstantial evidence may be used to establish the claim, and it is not necessary that the circumstantial evidence rise to that degree of certainty as to exclude every reasonable conclusion other than that found by the trial court. . . ." (p. 622.)

Viewing the evidence heretofore related in the light most favorable to the claimant, as we are bound to do under familiar rules on appellate review, we are compelled to conclude that it is sufficient to require affirmance of the trial court's findings and judgment awarding compensation. In so determining, we do not intend to imply that the evidence was not in conflict. The evidence would have supported findings made by the district court had they been

to the contrary, thus requiring a judgment in favor of the respondent. However, it is not our function on appellate review to weigh conflicting evidence; that responsibility falls within the province of the trial court whose judgment must be upheld if supported by substantial competent evidence.

Although there do not seem to be any reported cases in Kansas involving rheumatic heart disease, there is no reason to distinguish it from all other pre-existing heart conditions that have been held insufficient to bar recovery. An employer takes an employee as he finds him. The crucial question is whether the decedent's work served to aggravate or accelerate an existing disease, intensify the affliction, or contribute to the death of the workman. *(Bohanan v. Schlozman Ford, Inc.,* supra.)

A situation somewhat analogous to that presently confronting the court was presented in *Mein v. Meade County,* supra. There the workman had heart trouble for several years and had already suffered one heart attack. He was given the job of mowing, and trimming and bulldozing trees. There was some conflict as to the difficulty of the manual labor involved on such job. This court, nevertheless, upheld an award of compensation, stating it was not the function of the appellate court to weigh conflicting evidence, since that responsibility falls within the province of the trial court. The pre-existing heart trouble of the decedent was insufficient to bar recovery.

The judgment of the lower court is affirmed.

PRICE, C. J., dissents.